Spring Term
1839.

## Smith *against* Lampton and Wife.

CHANCERY.

[Mr. Apperson and Messrs. Payne and Waller for plaintiff: Mr. Beatty for defendants.]

FROM THE CIRCUIT COURT FOR GREENUP COUNTY.

Chief Justice ROBERTSON delivered the Opinion of the Court.

*April* 25.

IN August, 1822, Martin Smith, who died afterwards in the same year, published his last will, in which, among others, is the following bequest:—"I give and bequeath "to the children of my son Robert Smith, in bank notes "of the Bank of the Commonwealth of Kentucky or "notes of the State Bank of Kentucky, out of the mo-"nies of that description now on hands, as follows, to "wit. to Beverly, Frederick and Charles, each five hun-"dred dollars—to Eliza, Elizabeth and Mary, two hun-"dred and fifty dollars each, and to Martha three hun-"dred dollars. And it is my desire that my son Bird "receive the aforesaid bank notes, and with them pur-"chase lands for the said children, in the south west part "of this State, and that my said son Bird take the con-"trol of said lands and rent them out, protect them "from waste &c. and cause a just division thereof to "be made, and assign to each of said children his or her "portion, as above, when he or she shall arrive at full "age or marry, and not before."

The same Bird Smith was, among others, nominated as an executor, and was the only one who ever became qualified or acted as such.

The legatee Martha Smith, having, some years after the probate of the will, intermarried with John B.

By a will made in 1822 (the year of the testator's death,) he bequeathed to each of the children of one of his sons, a sum 'in notes of the Bank of the Com'th & of the Bank of Ky. out of the moneys of that description now on hands.' Those notes were then much depre ciated, but could be used *at par* in the purchase of lands from the State; & the will directed that an-other son of the testator, who was his ex'or, should take the notes & invest them in land in the south west part of the State; manage & control the land, for the legatees, &, as they came of age or married, allot to each his or her due share. The testator de-livered notes of that description to the trustee (ex'or,) on the day the will was

made, to the amount of the legacies to the boys, which was invested *for them*, but nothing for the girls; and, at the testator's death, he *left no such notes*. If these legacies were en-tirely specific, this disposal, by the testator in his life time, of all the notes he had to the use of the boys, was an ademption of the legacies to the girls, and those legacies therefore fail-ed.—But *held*, that they were not of that specific kind which fail for want of the thing be-queathed, or which may be adeemed, by the testator's application of the fund to another pur-pose; but were "pecuniary," "demonstrative" legacies which must be paid out of other funds of the testator—of which he left an ample amount, undisposed of.

In doubtful cases the law inclines against construing legacies as entirely specific: hence a legacy of a certain sum 'out of' a designated fund, bond, or note, or of some stock 'out of' a larger amount, &c. does not, in general, depend for its validity, on the sufficiency or exis-tence of the designated fund.

Spring Term Lampton, united with her said husband in bringing this
1839. suit in chancery against Bird Smith, as executor and
*Smith* trustee, and against the other legatees, praying for a
vs general settlement and distribution, and alleging, among
*Lampton & Wife.* other things, that the said Bird had neither made the
prescribed investment for the said Martha, in land, nor
accounted to her or her said husband, in any manner,
for her said legacy.

Bird Smith, in his answer, averred that, on the day
of the publication of the will, the testator delivered to
him fifteen hundred dollars in notes of the Bank of the
Commonwealth, with instructions to vest it in lands ac-
cording to the will, for the three legatees, Beverly,
Frederick and Charles—which he had in good faith
done; and that, at the time of the testator's death, there
was not, so far as he knew or believed, any bank notes
of the kind described in the said legacy, " *on hands*,"
and, insisting that the said legacy to Martha Smith was
specific, and had therefore failed, he denied that he was
liable, in any manner, therefor.

So much of the answer, as has been just noticed, is
fortified by a deposition of *Creed Smith,* a son of the tes-
tator, and who was present when the will was publish-
ed, and remained with his father until his death. And
there is no countervailing evidence, unless it may arise
from the character and terms of the legacy itself.

The Circuit Court having, among other things, de-
creed that Bird Smith should pay to Lampton and wife
two hundred and seventy dollars—which was deemed
the aggregate of the value of the paper bequeathed and
interest thereon, and given him the election to pay, in
lieu thereof, three hundred dollars in notes of the Bank
of the Commonwealth or of the Bank of Kentucky—
he prosecutes this writ of error to reverse the decree;
and they have assigned cross errors—he insisting that
he is not justly responsible for the legacy of three hun-
dred dollars in bank notes, and they contending that the
decree does not give them as much as they are entitled
to demand.

The foregoing statement presents the principal ques-
tions which we shall consider.

If the legacy we have quoted be deemed altogether specific, the record does not, in our opinion, present any sufficient ground for the decree for the two hundred and seventy dollars, as just recited. From all the facts, as now appearing, we ought, as we think, to presume that the testator left no bank notes of the kind described in the bequest; and, in that event, the legacy—if entirely specific—failed, or had been adeemed by the testator. And, as to the fifteen hundred dollars delivered in trust for the grandsons, the appropriation thus made by the testator, was an ademption, *pro tanto*, of the legacy to Martha.

But we concur with the Circuit Judge in considering the bequest as not being a specific legacy of that kind which will fail for want of the thing bequeathed, or may be adeemed by the testator's application of it to some other purpose; but as being a " pecuniary," " demonstrative" legacy, which, though it may have been so far specific as not to have been subject to abatement with general legacies, was nevertheless so far a general pecuniary legacy as not to fail merely because the fund out of which it is directed to be taken, had failed or never existed.

In doubtful cases, it is the policy of the law to incline against construing legacies as altogether specific. And therefore, nothing appearing to the contrary, a bequest of a certain sum of money " out of" or to be paid " out of" a designated fund or note or bond, or a bequest of stock " out of" a greater amount of the like stock, has been generally considered as a demonstrative legacy, pledging a particular fund as a collateral security, and being as to that security merely directory, but not depending for its validity or value, on the sufficiency or existence of the fund thus specially dedicated for securing it. *Williams on Executors*, 743–4; *Kirby* vs. *Potter*, 4 *Ves.* 748; *Roper on Leg.* 192, *3rd Ed.*

In this case, considering the style of the bequest itself, and looking also at the tenor of the entire will, it seems to us that the testator, intending to make provision for his son Robert's children instead of their father—bequeathed to their use, certain sums in notes of the then

Spring Term
1839.

Smith
vs
Lampton & Wife.

local banks, because, though they were greatly depreciated, they would nevertheless be received *at par* for lands west of the Tennessee, where he directed the trustee to buy lands for those legatees—intending that they should be provided with land in that quarter whether he should happen, or not happen, to have "*on hands*" as much of that paper as would be sufficient; but *directing* the trustee to take and apply the legacies out of depreciated bank paper "*on hands*," merely because he supposed that he would have, at his death, a sufficient quantity of such paper which could not be appropriated as advantageously in any other mode, as in the purchase of lands for which it would be received as the equivalent of *specie*. We infer, first—that his object was to secure to them, as certainly as to any others of his legatees, as much as would procure for each of them a tract of land in a part of Kentucky where it could then be bought for an inconsiderable sum, and would rapidly increase in value; secondly—that he bequeathed to them depreciated bank paper for that purpose, because such currency was receivable for such lands; and, thirdly—that he directed the payment to their trustee, "out of" such notes "*on hands*," because he either had or expected to have them, and could not apply them to any other purpose as advantageously.

We therefore, conclude that, even if the testator died without any such funds " on hands," the legacies were nevertheless valid and enforcible, out of the proceeds of his apparently large estate not otherwise exclusively appropriated by his will.

And we are clearly of the opinion, therefore, that Bird Smith has no just cause to complain of the decree so far as it applies to this legacy.

Nor can we perceive any other substantial ground for complaint by him. The deposition to which he excepted, could not have had any influence on the decree against him; and of course, it is not necessary, on his assignment of error, to determine whether it was admitted improperly.

A trustee who is appointed by a will, and directed Upon the cross errors the chief complaint is, that the Circuit Judge did not decree the present value of land

which it was the trustee's duty to purchase. We do not doubt that, had he been guilty of any wanton or culpable delinquency, he might be required to indemnify the *cestui que trust*, by paying to her as much as her bequest would now be worth if he had executed the trust in proper time and in a faithful manner.

But from the character of the bequest and other circumstances, we do not think that the trustee should be subjected to the penal consequences of bad faith, or a culpable omission of duty.

Nor, for similar reasons, should he, in our opinion, be held responsible for more than the amount of this legacy in kind, or the value of it from about one year after the testator's death to the date of the decree against him—which two sums would be nearly equivalent the one with the other.

But Mrs. Lampton is also entitled to a residuary bequest, which Bird Smith *as executor*, was directed by the will to make productive by loaning it. If he discharged this duty faith●●●y, he made some profit by loans of interest on the ●●●cipal sum; and, in computing the interest for which he should now account, periodical rests should be fixed. Nothing appearing to the contrary, we should presume that he might have made annual loans without much intervening delay or loss of time or of interest. And therefore, in the absence of other facts—considering the prevalence of deranged currency and credit for a small portion of the time, and the habits and usages of lenders and borrowers of money in this State generally—we are disposed to fix the rests at *two* years.

The Circuit Court neither made any rests, nor gave any interest on interest. In this respect the decree is, in some slight degree, more favorable to the plaintiff in error than, according to strict justice, it should be. And, for that error, the decree is reversed on the cross assignment of errors, and the cause remanded, for another decree conformable herewith, and which should also be more specific as to the interest than that now reversed.

VIII. 10

to invest the fund entrusted to him in a particular manner, for the benefit of the *cestui que trust*, but who, having accepted the trust, wantonly or culpably neglects to make the investment, may be liable for what the legacy would have been worth invested as directed. But where a testator bequeathed to a legatee, a sum in depreciated bank notes "out of those on hands," to be invested in land for the benefit of the legatee, but disposed of all the notes he had of that sort, before he died, & the ex'or considered the legacy as adeemed, he is held liable only for the same amount of notes in kind, or for their value and interest from about one year from the testator's death.

A legatee being entitled to a residuary bequest which the ex'or was directed by the will to make productive, he is liable for compound interest, to be calculated (the circumstances considered,) with *biennial* rests.