EARL SHAW & al. *versus* JOHN REED.

A promise, made in consideration that the promisee would procure the discontinuance of an indictment, in which he was prosecutor, is invalid.

A was in prison in Massachusetts upon an indictment for having fraudulently obtained goods from the prosecutor by false pretences. It was then agreed by the prosecutor, that he would procure a *nol. pros.* and stop the prosecution, if B, a friend of A, would pay the costs, and give his notes for a specified sum, to be allowed on the debt due from A, for the goods. The prosecutor procured the *nol. pros.* to be entered, and A to be thereby discharged. B refused to give the notes as he had promised. *Held,* that the consideration for the promise was illegal, and that no action by the prosecutor could be maintained upon it.

*May,* for plaintiff.

*Walton,* for defendant.

SHEPLEY, C. J. — This case having been submitted to the decision of the Court upon a report of the testimony, it becomes necessary in the first place to determine, what the contract between the parties, is proved to have been.

The testimony shows, that an indictment was pending in the municipal court of the city of Boston, against Abraham Reed, a brother of the defendant, for obtaining goods from the plaintiffs by false pretences ; and that he had been arrested and imprisoned to await his trial.    After a conversation between one of the plaintiffs and the defendant, in the preceding month of

May, the defendant, on July 13, 1846, addressed a letter to the plaintiffs, in which he says; "I will make you one proposition; and that is, I will pay you one hundred dollars down, out of which you must pay the cost of prosecution, and two good and satisfactory notes of one hundred dollars each, payable in one and two years. No discharge is asked, so far as my brother and his partner is concerned, only credit to his account. The money and notes to be deposited in the hands of a third person, to be drawn by you, provided my brother is discharged and suffered to leave the State of Massachusetts."

One of the plaintiffs, on July 16, addressed a letter to the defendant in answer, and without accepting his offer, he says, "After receiving yours yesterday, I called on Mr. Parker, the county attorney. He agreed to *nol. pros.* whenever the cost was paid, and I would say I was satisfied." "Give me cash $125, to remunerate for the money paid out, and a note for $200 payable in one year with interest, at either bank in Boston, with satisfactory indorsers, such as G. W. Stanley, Esq. or Gen. Greenleaf White will say they consider good, and I will stay the action and get him discharged."

In a letter bearing date on the day following, the defendant says: —"I do not object to the one year instead of the two, and interest on the notes, in your offer, which makes an addition of some twelve dollars, besides one year instead of two equal annual payments." He then refers to the sum of $125 proposed to be paid in cash, and says: —" But it is utterly out of my power to go further than I propose," which was to pay in cash, $100.

In a letter addressed to the defendant on the day following, one of the plaintiffs says: —"I shall receive cash $100, and a note for $200, payable as proposed in my last letter."

Thus the contract as proposed by the plaintiffs to the defendant, modified by reducing the amount to be paid in cash, from $125 to $100, was assented to by both parties.

The action is brought by the plaintiffs to recover damages for a breach of that contract in omitting to give the note for $200.

Shaw v. Reed.

To prove performance on their part, the plaintiffs introduce the testimony of Samuel D. Parker, which states, that he made the following indorsement upon the indictment.

" And now on the 13th day of August, 1846, the said Abraham Reed having been several months confined in jail and having satisfied the prosecutors, and the costs being paid, I will no further prosecute him on this indictment, at the written request of the prosecutors."

The proof shows, that the indictment was found on the promotion of the plaintiffs, who were regarded as the prosecutors. That a *nolle prosequi* was entered upon it by their written request. The inference is unavoidable, that the request was made, and that the indictment was no further prosecuted in consequence of the agreement made between the plaintiffs and the defendant. This shows a performance on the part of the plaintiffs of an agreement made by them with the defendant, to " stay the action and get him discharged." Or, in other words, no further to prosecute for a crime punishable by imprisonment, in the State prison, and to permit the accused to be discharged, which was the substance of the proposal made to them by the defendant.

The question is then presented, whether such an agreement can be enforced in a court of justice.

In the case of *Collins* v. *Blantern*, 1 Wil. 341, Chief Justice WILMOT in his opinion says, " it is the duty of every man to prosecute, appear against, and bring offenders to justice." He considered the consideration of a contract " to stifle a prosecution for perjury," to be " wicked and unlawful."

In the case of *Edgecombe* v. *Rodd*, 5 East, 294, a person prosecuted for having disturbed public worship, made an agreement with the prosecutor, that with the consent of the magistrates, he would no further prosecute him for the alleged offence but would consent to his discharge. Lord ELLENBOROUGH said, " such an agreement has a tendency to produce impunity for the commission of the offence." " In *Collins* v. *Blantern*, an agreement to put an end to a prosecution for a misdemeanor, was considered to be illegal as impeding the

course of public justice. And this produced the same mischief." GROSE, Justice, said, "the agreement stipulating for the plaintiff's discharge for want of prosecution was illegal and void." LAWRENCE, Justice, observed, " the justice of the country has been defeated."

These cases exhibit the established doctrine of the common law. The cases cited by the counsel for the plaintiff are not opposed to it.

In the case of *Beely* v. *Wingfield*, 11 East, 46, the defendant had been indicted and *convicted*, for ill treating his parish apprentice. The chairman of the Court, suggested to him, that if he would agree to pay forty guineas towards the expenses of the prosecution, he would be imprisoned six instead of twelve months. He gave his note for that amount, and the contract was decided to be a lawful one. Lord ELLENBOROUGH says, " the overseers got no pecuniary benefit to themselves, or to the parish beyond a fair amount of the expenses incurred by them in bringing the defendant to justice. It did not stifle a public prosecution, or elude the public interest in bringing such an offender to justice by way of example to others."

In the case of *Brett* v. *Close*, 16 East, 293, one Dent had been appointed in chancery receiver of an estate, and had received a certain amount of income, which he had been ordered to pay over. For his neglect to do this he had been arrested on a chancery warrant and released upon giving two promissory notes for the amount, with the defendant as his surety. It was contended in a suit upon the notes, that the transaction was illegal, but the Court decided otherwise on the ground, that the process, though criminal in form, was only ancillary to a civil remedy to enable the creditor to collect his debt, and that he had the control of it.

In the case of *Pilkington* v. *Green*, 2 B. & P. 151, one of the defendants had been *convicted* and ordered to pay penalties to the amount of one hundred and fifty pounds, for a violation of the excise laws. He was arrested on a warrant and releas ed by the officer upon giving notes with surety for

Shaw *v.* Reed.

the amount.  The conduct of the officer had been approved by the commissioners of excise.  Judgment was rendered against the defendants in a suit upon one of the notes.  In that case no agreement had been made to forbear to prosecute or to be instrumental to prevent a conviction of the offender.

The case of *Harding* v. *Cooper*, 1 Stark's R. 467, was not regarded by Lord Ellenborough as intrenching on the doctrine before asserted by him.  On the contrary, he said, "a stipulation to drop the prosecution would without doubt be illegal, but if the party authorized his agent to compound his civil rights only, and after coming to a settlement the creditors chose to forego the prosecution, the transaction was not illegal."

If it be the duty of every man it, is more especially the duty of persons injured, who have caused criminal prosecutions to be commenced, to appear against offenders, and not to make bargains to allow them to escape conviction, if they or their friends will pay a sum of money to repair the injury.  To decide that such bargains might be lawfully made, would be to lend a helping hand to make public justice venal.  To procure a compensation to be made to the person injured, is a subordinate object to the State, in causing crimes to be punished.  It causes crimes to be punished, that they may not be committed with impunity, and therefore, become more frequent ; that the rights of property and the inviolability of the person may not become less secure ; that persons may depend upon the execution of the laws, rather than resort to physical force for the preservation and protection of their rights.

It is contended, in this case, that the plaintiffs did no more than to secure, as far as they might, the payment of their just debt ; and that the county attorney did no more than he had a legal right to do.  But the plaintiffs, as a consideration for the promise of the defendant, were not only to credit the amount of the notes in account with their debtor, but were to cause him to be discharged from that prosecution.  The agreement was designed by both the parties to it to have the effect to stifle the prosecution and to discharge the accused.

As this was the consideration for the promise of the defend-
ant, no action founded upon it, can be sustained in a court of
justice. .                                    *Plaintiffs nonsuit.*