# IN THE MATTER OF THE ESTATE OF FREDERICK A. WOODWORTH.

ASSETS OF ESTATE AT COMMON LAW.—Under the common law, where no different order is prescribed in the will, the assets of the deceased, for the purpose of paying the debts of the estate, will be marshalled, and the debts paid out of them in the following order : First, the personal estate not specifically bequeathed, or expressly or by implication excepted ; second, lands expressly devised for the payment of debts; third, lands descended to the heir; fourth, lands devised.

IDEM.—This order of marshalling the assets is not to be disturbed by the fact that lands are devised subject to a mortgage thereon.

IDEM.—The personal estate is first to be applied and exhausted, even for the payment of debts charged upon the real estate by mortgage, if the debt so charged was the personal debt of the testator.

IDEM.—It requires express words in the will, or an intent clearly manifest upon an examination of the entire will, to disturb this order.

IDEM.—The making of a specific bequest is regarded as indicating an intention to discharge the particular personal property specifically bequeathed from the debts of the testator.

IDEM.—A specific bequest of personal property is the bequest of a particular thing or money specified and distinguished from all others of the same kind, as of a horse, or money in purse.

SPECIFIC BEQUEST.—A bequest of "all my personal estate * * * * " is not a specific bequest, and under the common law such bequest would not discharge the personalty from being first applied to the payment of the debts.

PAYMENT OF DEBTS OF DECEASED.—Under our law generally the personal estate which comes into the hands of the executor is first chargeable with the payment of the debts of the deceased.

Idem.—The rents and profits of the real estate accruing subsequent to the death of the testator, are not personal property in the hands of the executor to be first applied to the payment of debts in exoneration of the general personalty.

Idem.—Under our law, as between the legatee of the personalty and the devisee of the realty, the executor is not authorized to appropriate the rents of the real estate which accrued subsequent to the decease of the testator, to the satisfaction of a debt of the deceased secured by a mortgage on the realty, in exoneration of the personalty.

Devise of Realty.— Under the common law, every devise of real estate was regarded as specific. Under the statutes of California, a devise of real estate may be general.

Idem.—A devise of all the real estate of which the testator may die seized, made in pursuance of the provisions of section twenty-two of the Act of the State of California concerning wills, is a general, not a specific, devise.

Marshalling Assets to pay Debts of Deceased. — Where the testator dies leaving both personal and real estate, and owing debts secured by mortgage on the realty, and bequeaths all the personal estate and one half of all the realty to one devisee, and the remaining half of the real estate to another devisee, and makes no mention of the debts, the legacies and devises are all general, and the real and the personal estate devised, under sections one hundred eighty and one hundred eighty-one of the Probate Act, must contribute pro rata to the payment of the debts, in proportion to the value or amount of the several devises or legacies.

Appeal from the Probate Court, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Daniel Rodgers*, for Appellants. At common law, rent is incident to the reversion, and the executor is entitled as against the heir or devisee to all rents that may be due at the time of his death, but rent becoming due thereafter descends with the land to the heir or devisee. Has our statute changed this principle? Section one hundred and fourteen of the Probate Act allows the executor to receive the rents and profits of the real estate, but this does not allow him to apply these rents and profits to the payment of debts irrespective of the personal estate. · The Act further subjects both personal and real estate to the payment of debts, but the real estate only after the personal estate is exhausted. It will be urged upon the part of the respondent that when the rents are collected they become personal estate, and are then, and as such, subjected to the payment of debts. By the common law, the order of payment of debts was as follows : 1st, personal

estate ; 2d, land specifically devised for the payment of debts; 3d, land descended ; and 4th, land devised. Our statute preserves the same order for payment. Section one hundred and fifteen, Probate Act, declares that " the personal estate of the deceased, which shall come into the hands of the executor or administrator, *shall be first chargeable with the payment of the debts."* Section one hundred and sixty-three, same Act, provides : "" If it appears that any part of such real estate has been devised and not charged in such devise with the payment of debts or legacies, the Court shall order that part descended to heirs to be sold before that so devised." Thus it may be seen that the Probate Act substantially enacts the principle of the common law in this matter of the order of payment. The bequest of personal estate does not exempt it from its liability to the payment of debts, unless a clear intention to that effect appears on the face of the will, nor does it exempt the personal estate from its liability to exonerate the real estate, unless a like intention is apparent. (12 Price, 324.) " It is a general rule, in the absence of a contrary intention, that the personal estate is the first and natural fund for the payment of debts." (3 Rawle, 237–239.)

*Crockett, Whiting & Naphtaly,* for Respondent. The rule at common law that the devisee of land encumbered with a mortgage made by the testator might call on the executor to exonerate the land out of the personalty, applied only to cases where the personal estate was not specifically devised. Personal estate, not specifically devised, was not made to exonerate encumbered real estate, unless it was apparent from the will that the testator so intended. We contend that the devise of the personalty in this case was specific. Is this rule varied by our statute? At common law the real estate went directly to the heir or devisee, and the personal estate only was a fund in the hands of the executor for the payment of debts. This is changed by statute. Under our system the real estate also is a fund out of which the executor may pay the debts and expenses. The only change made in the com-

mon law by sections one hundred and fourteen and one hundred and fifteen of the Probate Act is, that the real estate and its rents and profits constitute a fund in the hands of the executor for the payment of debts in default of personalty. The order of priority in which the real and personal estates are chargeable is not changed, except that for the purpose of paying the debts and expenses, the rents and profits of the real estate *become a part of the personal estate*, and must be exhausted before the real estate can be sold. It will be observed, the executor is to receive the rents and profits " until the estate is settled, or until delivered over to the heir or devisee, by order of the Probate Court." This last provision was inserted to meet the contingency resulting from an order of distribution made *before* a final settlement of the estate. What were the ends to be accomplished by this innovation on the common law? Only these, to wit: 1st. To enable the executor to apply the rents and profits to the payment of debts, and thus, if possible, preserve the real estate ; and 2d. To enable the real estate to be applied to the payment of debts when necessary, in an expeditious, safe and economical manner, without following it into the hands of the heir or devisee. These provisions only enlarge the fund in the hands of the executor, but do not in any way change the order of priority, except in respect to the rents and profits, which become a part of the personal estate, for the purpose of paying debts and expenses. The rents and profits must be exhausted before the real estate can be sold. But if the real estate is not to be charged with the entire incumbrance, and if the personal estate which was devised must *first* liquidate the debt, it is quite evident under sections one hundred and eighty and one hundred and eighty-one of the Act to regulate the settlement of the estates of deceased persons, that all the devisees must contribute " in proportion to the value or amount of the several devises or legacies " on a proceeding for distribution, to reimburse the devisee of the personalty.

By the Court, SAWYER, J.:

In 1855 Frederick A. Woodworth made his will, by which he left "all" his "personal property," and "one half of all the real estate of which" he might "die possessed," to his brother, Selim E. Woodworth, and appointed him sole executor. The remaining half of the real estate, he left to his mother, sisters and others—the appellants in this proceeding. No reference to, or provision for, debts is made in the will. Long after making the will, in 1864, said F. A. Woodworth mortgaged portions of his real estate to the "Savings and Loan Society" to secure the sum of something over thirty thousand dollars and accruing interest, and soon after died, leaving the same incumbered by said mortgage. His personal estate, at the time of his decease, was more than sufficient to pay all his debts, including said mortgage. The said Selim E. Woodworth qualified as executor, took possession of the estate and collected rents of the real estate accruing subsequent to the testator's decease, to the amount of over fifty thousand dollars. A large portion of the rents of the real estate thus collected were applied in payment of the debt secured by said mortgage. The executor, in his accounts, charged himself with the rents collected and credited himself with the amount paid in satisfaction of the mortgage and other debts, and claimed to have his accounts allowed, and finally settled, on that basis. The other devisees filed exceptions to the account, alleging, as a ground of objection, that the personal estate ought to have been applied to the extinguishment of the mortgage and other debts in exoneration of the real estate—at all events, that the rents of the real estate should not be applied in exoneration of the personalty. The Probate Court held that the rents were properly applied to the payment of the mortgage, and the correctness of this ruling is the only question presented by the record on appeal.

Under the common law, where no different order is prescribed or indicated in the will, as between executors, devisees and heirs, the assets of the deceased, for the purpose of paying

the debts of the estate, will be marshalled, and the debts paid out of them, in the following order : Firstly—The general personal estate—that is to say, personal estate not specifically bequeathed, or expressly, or by implication excepted.   Secondly—Lands expressly devised for the payment of debts. Thirdly—Lands descended to the heir ; and fourthly—Lands devised.   (Redf. on Wills, Part I, p. 868 *et seq.* and notes ; 2 Jar. on Wills, 554 ; 4 Kent's Com. 421.)   And it is also the settled rule of English and American law, that this order is not to be disturbed by the fact that lands are devised subject to the mortgage or incumbrance thereon.   The personal estate is first to be applied and exhausted, even for the payment of the debts charged upon the real estate by mortgage, or other incumbrance, if the debt so charged upon it was a personal debt of the testator ; for the mortgage is regarded as merely a collateral security for the personal obligation.   And when the testator devises lands expressly subject to a mortgage, he is considered as using the terms merely as descriptive of the incumbered condition of the property, and not for the purpose of subjecting his devisees to the burden.   (2 Jar. on Wills, 553–4 ; 2 Will. on Ex. 1,461–2, 1,443 and note O ; 4 Kent Com. 420–1.)   It requires express words, or an intent clearly manifest upon an examination of the entire will, to disturb this order.   There must be a manifest intent, *not merely to charge* the real estate, *but to discharge* the personalty.   (4 Kent, 421 ; *Ancaster* v. *Mayer,* 1 Bro. Ch. C., 462 ; *Stephenson* v. *Heathcote,* 1 Eden, 43 ; *Bootle* v. *Blundell,* 1 Mer. 230 ; *Lord Inchiquin* v. *O'Brien,* 1 Wills. 88 ; *Tait* v. *Lord Northwicke,* 4 Ves. Jr. 823.)   As to what provisions in the will shall be regarded as indicating an intent to discharge the personalty, or a specific portion of personal property, or a contrary intention, there is a multitude of cases in which the question is discussed.   The distinctions taken are numerous, and in many cases, it must be confessed, exceedingly " attenuated."   We have examined a large number of authorities, but shall cite but few ; for, so far as this case is concerned, it will be unnecessary to consider the many nice distinctions taken.

A specific legacy is considered as taken out of the general personal estate and exonerated from the payment of the debts. The making of a specific bequest is regarded as indicating an intention to discharge the article or particular portion of personal property specifically bequeathed from the debts of the testator. What is a specific bequest, within the meaning of the rule ?

Mr. Roper, the learned author of the standard work on Legacies, says a specific legacy may be defined : "The bequest of a particular thing, or money, specified and distinguished from all others of the same kind, as of a horse, a piece of plate, money in a purse, stock in a public fund, a security for money, which would immediately vest with the assent of the executor." (1 Roper on Legacies, 191.) He then illustrates his definition by an examination of, and reference to, a multitude of authorities bearing upon the question. Substantially the same definition is given in Ram on Assets, 467 : "A specific legacy, as its term imports, is a bequest of a particular article or articles capable of being designated and identified." (*Bradford* v. *Haynes*, 30 Me. 108 ; *Pierce* v. *Snaplin*, Atk. 508.) Mr. Williams says : "The bequest of all a man's personal estate generally is not specific ; the very terms of such a disposition demonstrate its generality. And the circumstances of the bequest of the general personal estate being in the same sentence with that of the real, the devise of which is naturally specific, will not be sufficient to make it a specific legacy." (2 Williams on Executors, 1,006 ; Redfield on Wills, Part II, 475 ; Ib. 457.) In *Parrott* v. *Worsfold*, 1 Jacob & Walk. 595, where a testator stated that he had fifteen hundred pounds five per cents, and gave it to A., and then gave to B. all other stocks that he might be possessed of at his death, the latter bequest was held not to be specific, and liable in exoneration of the former. The Master of the Rolls said : "Now the words are in their nature general, comprehending not only the stock he had at the time of making his will, but all that he might subsequently acquire ; if he had sold out and bought

76

more, that would have been included. But has it ever been decided that such words would constitute a specific legacy? The ordinary criterion of a specific bequest is that it is liable to ademption; that if the thing bequeathed is once gone, it is lost to the legatee. That criterion fails here, for it would equally pass stock acquired afterwards. Can it be said that a will made now can contain a specific bequest of what may be bought hereafter—of what does not now exist? In a certain sense it may be said that legacies of this kind are specific; as, a legacy of all the testator's cattle, or all his personal property at his death; but it is not specific unless you can fix on the individual thing given. But here it is general; the testator did not mean it to be confined to the stock he had at the time; he meant this daughter to be more largely provided for." (601.) In the case of *Walker's Estate*, 3 Rawle, 230, the testator bequeathed to his wife " all his household goods and furniture, money, bonds, mortgages, outstanding debts due and owing to him, and all his other personal estate, of whatever nature or kind soever, to hold to her, his said wife, Elizabeth Y. Walker, her heirs and assigns forever." This was held, in an able opinion in which the question was fully discussed, not to be a specific bequest, and not exonerated from the payment of the debts. The Earl of Strafford, by his will, gave to his wife " all his personal estate whatsoever, (except the furniture in Wentworth Castle,) for her life," subject to certain payments. This was held not to be a specific legacy. (*Howe* v. *Earl of Dartmouth*, 7 Ves. Jr. 147.) John Blewitt " gave and bequeathed unto his brother, Edward Blewitt, all his moneys, goods, chattels, rights, credits, personal estate and effects whatsoever and wheresoever; and appointed his said brother sole executor." This was held not to be a specific bequest, and not sufficient to exempt the personal estate from the debts. The Master of the Rolls says : " This is stripped of every circumstance except that of a devise [of real estate] to a trustee for the payment of debts, and a general bequest of the personal estate to the executor. There is no case since *French* v. *Chichester*, the first upon the subject, in which such words

as these have been alone sufficient to exempt the personal estate. It has been over and over again decided, that such words are not sufficient to raise such a demonstration as Lord Thurlow says is necessary." (*Brummel* v. *Prothero*, 3 Ves. Jr. 114.) In *Blake* v. *Lord Wallscoot*, 1 Ba. and Bea. 312, Joseph Blake devised his lands, subject to payment of debts, etc.; then appointed his son executor and " bequeathed him all his personal estate " in trust for the daughter of the testator. The Lord Chancellor held that the personal estate was not exonerated—that is to say, that the bequest was not specific. (See also *French* v. *Chichester*, 2 Vern. 568 ; *Hazlewood* v. *Pope*, 3 P. Williams, 324; *Cuttler* v. *Coexter*, 2 Vern. 302 ; *Clifton* v. *Burt*, 1 P. Williams, 679 ; *Tepping* v. *Tepping*, Ib. 730 ; *Chester* v. *Painter*, 2 P. Williams, 336 ; 2 Jar. on Wills, 577 ; *Smith* v. *Lampton*, 8 Dana, 70 ; *Briggs* v. *Harford*, 22 Pick. 289–90 ; *Davis et ux.* v. *Caines' Ex.*, 1 Ired. Eq. 309 ; *Walton* v. *Walton*, 7 John. Ch. 262.) Courts have always leaned strongly against construing a legacy as specific when there is any doubt ; and such a rule of construction is usually far more favorable to the legatee ; for a specific legacy is liable to be adeemed, and, therefore, entirely lost. (See authorities above cited.)

The position of the respondent's counsel, that the bequest of the personal estate in this case is specific, cannot be sustained. The bequest is not specific within the meaning of any authority brought to our notice. The language is : " I bequeath all my personal estate to my brother Selim E. Woodworth." The language is as general in its terms as it could well be. And there is nothing else in the will to indicate any intention to make it in effect specific—nothing to indicate a design to exempt it from the payment of the debts or to disturb the order of payment established by the law itself. It is given to the executor—a circumstance which is regarded as very important in many cases to show that there was no intent to exempt it, when there are other circumstances indicating such a purpose. But this circumstance is, perhaps, of less significance under our law, where the consequences of not

making any express disposition of the personalty are not the same as at common law. But in many of the cases cited, other property was expressly charged with payment of the debts, or devised expressly subject to mortgages, and yet a general bequest of the personalty, as in this case, was held not to be exonerated, without being expressly discharged, or discharged by necessary or plain implication upon a view of the entire will. In this case there is nothing whatever said about debts, nor does it appear that there were any, or that any were contemplated at the date of the will. It seems clear that, under the rule at common law, the personal property would have been first applied in payment of the debts, and it only remains to be considered whether the order in which the assets are to be marshalled has been changed by statute.

By section one hundred fourteen of the Probate Act, the executor or administrator has a right to the possession of the real as well as the personal estate, and may receive the rents and profits of the real estate until the estate is settled up and delivered over to the heirs and devisees by order of the Probate Court. But this section does not of itself make any change in the order in which property shall be applied in payment of the debts. The title at the moment of the death of the testator, or intestate, vests in the heirs and devisees, subject only to the lien of the executor or administrator, for the payment of the debts and expenses of administration, with the right in the administrator of present possession, which continues till the estate is settled or delivered over to the parties entitled by the order of the Probate Court. (*Beckett* v. *Selover*, 7 Cal. 288; *Meeks* v. *Hahn*, 20 Cal. 627; *Updegraff* v. *Trask*, 18 Cal. 459; Redfield on Wills, Pt. II, 592.) The possession with the right to collect rents is only given to the executor or administrator to enable him to settle up the affairs of the estate in the mode prescribed by law. But no change necessarily results in the order of application of the funds from this provision or any provision merely making real estate assets. But section one hundred fifteen expressly provides that " the personal estate of the deceased which shall come

into the hands of the executor or administrator shall be first chargeable with the payment of the debts and expenses," and if the personal estate coming into his hands is insufficient, then the whole real estate may, if necessary, be sold.

This section expressly adopts the order, so far as the personalty is concerned, established by the common law. The real estate is made assets in case it should be required, not otherwise, and the order of priority is not changed. But it does not follow that the rents of the real estate go into the mass of the general personal estate. Undoubtedly, if required to pay the debts, as between the creditors and heirs or devisees, the rents received after the death of the testator would be applied before a sale of the real estate. But it by no means follows that, as between the general legatee of the personal estate, or the heir in case it is not bequeathed, and the devisees of the real estate, the rents would not belong to such devisee. On the contrary, it would seem to follow that, as the title vests in the devisee at the moment of the death of the testator, subject only to payment of the debts in the order prescribed by law, the rents of the land would belong to the owner of the land, subject to payment of the debts in the same order; and this, we think, is the case, unless there is some other provision affecting the question; that is to say that the rents of the real estate accruing subsequent to the death of the testator, for the purpose of marshalling the assets, should be regarded as belonging to the realty from which they were derived. Such was the rule at common law, and no change in this respect appears to be intended. Even specific legacies of personalty carry any accessions by way of increase or interest accruing after the death of the testator. (Redf. on Wills, Pt. II, 566, par. 4.) But if it should be necessary to resort to the realty, then the rents collected from it should first be exhausted before a sale of the realty itself. There is nothing in sections one hundred fifty and one hundred fifty-one in conflict with these views. The executor has no more right to sell personal than real estate, unless necessary for its preservation, or to pay charges upon it. Personal estate not

bequeathed, like real estate, goes to the heir, under our stat-
ute, and not to the executor, except for the purpose of settling
the estate and paying the debts and charges upon it.   He no
more owns it, as he did at common law, than he does the real
estate; and he is no more authorized to sell it, unless neces-
sary, than he is to sell real estate.   But there may be as great
necessity for selling it, for the purpose of marshalling the
assets between the legatees, heirs and devisees, as to pay debts.
These sections only prohibit sales for the purpose of giving
effect to the change which gives the personal estate not dis-
posed of by will to the heir, without necessarily interfering
with the order of priority in marshalling the assets.   They are
simply intended to give effect to other provisions of law relat-
ing to descents and distribution, without attempting to change
the law in these particulars.

Where a sale of real estate is necessary, "if it appear that
any part of such real estate has been devised, and not charged
in such devise with the payment of debts or legacies, the
Court shall order that part descended to the heirs to be sold
before that so devised." (Sec. 163.)   Thus, in this respect,
also, the order of priority established at common law is rigidly
followed.   Section one hundred seventy-six only recognizes
the power of the testator, which existed at common law, to
charge legacies upon real estate, and when so charged, and
the personalty, which is to be first appropriated notwithstand-
ing such charge, is insufficient, provides for enforcing it.   Sec-
tion one hundred seventy-seven recognizes the power of the
testator, which we have seen also existed at common law, to
change the order of priority by express provision or other clear
manifestation of his intent in his will.   The section itself does
not profess to change the order, but leaves it to the testator to
do so, if he sees fit; just as he could at common law, and in
precisely the same mode; thus, so far, manifesting no intent
on the part of the Legislature to change the order, but on the
contrary, by express recognition, manifesting an intent to
leave the matter just where the experience of ages had estab-
lished it.   Section one hundred seventy-eight provides for car-

rying into execution the direction of the testator. Section one hundred seventy-nine is supplementary to the preceding sections, and provides that when the estate thus appropriated out of its order is insufficient to pay the debts and other expenses mentioned, " such part of the estate as shall not have been disposed of by will, if any "—that is to say, estate descended, rather than specific legacies and devisees—shall be appropriated for that purpose. That is precisely what would have been done under the common law in similar circumstances.

These are all the sections of the Act relating to the " estates of deceased persons " supposed to bear upon the question brought to our notice, except sections one hundred eighty and one hundred eighty-one, which will be hereafter considered in the course of this opinion; and thus far it is quite manifest that the author of these several provisions was profoundly versed in the established principles of common and equity law applicable to the subject, and that he cautiously avoided making any change in the order of priority in the marshalling of the assets as between legatees, devisees and heirs. Such, we are persuaded, must be the conclusion attained by any jurist who thoroughly and critically examines the subject.

It is further claimed that section fifteen of the " Act concerning wills " requires the devisees of lands incumbered by mortgages to take them *cum onere* without any right to have them exonerated out of the personal estate. The section is as follows: " A charge or incumbrance upon any estate for the purpose of securing the payment of money or the performance of any covenant or agreement shall not be deemed a revocation of any will relating to the same estate which was previously executed, but the devises and legacies therein contained shall pass subject to such charge or incumbrance." (Belk. Prob. Act, p. 209.) It is plain, however, that no such object was contemplated or provided for in this section. The object was simply to provide in express terms that a subsequent mortgage should not be construed as a revocation of the will as to the mortgaged land—that it should still go to the

devisees, but subject to the mortgage. That is to say, that, as to the mortgagee and devisee, neither the mortgage nor the devise should fail, unless the entire mortgaged estate should be required to satisfy the debt secured. This is a provision affecting the rights of the parties to the mortgage and devise. It has no reference whatever to the order of priority as between legatees, devisees and heirs. The words " subject to such charge or incumbrance " mean no more nor less, in this connection in a statute, than in the same connection in a will. And the signification of these words, in a similar connection in wills, had long been settled by an unvarying line of decisions. Says Jarman : " Thus it is settled that a devise of lands subject to the mortgage or incumbrance thereupon, does not so throw the charge on the estate as to exempt the funds, which by law are preferably liable." (2 Jar. on Wills, 553–4; Ram on Assets, Ch. XXIX, Sec. 1, last clause, p. 441, 2d Eng. Ed.; *Galton* v. *Hancock*, 2 Atk. 437 ; *Astley* v. *Tankerville*, 3 Bro. Ch. 548; *Bickham* v. *Crutwell*, 3 My. & Craig, 769; *Serle* v. *St. Eloy*, 2 P. W. 386 ; *Barnewell* v. *Cawdor*, 3 Madd. Ch. R. 453.) It was with reference to this settled construction of similar language in wills that these words were used in the statute. Like many of the provisions already cited, it only enacted in express terms the rule of the common law upon the subject. In fact, if any other specific intent can be inferred from the adoption of this provision, it would seem to be to avoid by express provision, rather than effect, the result claimed for it by the respondent; for, at common law, any change in the condition, any alteration or new modelling of the estate in lands after the making of the will, was a revocation, except in case of mortgages and charges on the estate for debts, which were only a revocation *quoad* the special purpose, and were taken out of the rule on the ground that they were securities only. (*Walton* v. *Walton*, 7 John. Ch. 272.) When considered with reference to the common law as it stood, the meaning of the provision under consideration is by no means obscure, and, as we conceive, the language used is not inapt; for its signification, when used with reference to

the subject matter, was as well settled as that of any other equal number of words used in the law. And it would be well if legislators would more frequently adopt forms of expression, the meaning of which is so well settled, rather than substitute language entirely new to the law, under the impression that their intention would be made more clearly manifest. Such experiments are often troublesome; and confusion, rather than order, not unfrequently follows in their train.

Thus far we have seen that the long established rule of priority in marshalling the assets, as between legatees, devisees and heirs, has not been disturbed by our statute. It follows that as between the legatee of the personalty, and the devisees of the realty, the executor was not authorized to appropriate the rents of the real estate accrued subsequent to the decease of the testator, to the satisfaction of the mortgage debt in exoneration of the personalty.

It is next insisted that if the devisees of the real estate incumbered by said mortgage did not take it *cum onere*, as claimed by respondents, then, under sections one hundred eighty and one hundred eighty-one of the Probate Act, the legatee of the personal, and devisees of the real, estate must contribute to the payment of the debts "in proportion to the value or amount of the several devises or legacies;" and this view we think correct.

The sections are as follows:

SEC. 180. The estate, real and personal, given by will to any legatees or devisees, shall be held liable to the payment of debts, expenses of administration, and family expenses, in proportion to the value or amount of the several devises or legacies, except that specific devises or legacies may be exempted, if it shall appear to the Court necessary, to carry into effect the intention of the testator, if there shall be other sufficient estate.

SEC. 181. When the estate given by any will has been sold for the payment of debts and expenses, all the devisees and

legatees shall be liable to contribute according to their respective interests, to any devisee or legatee from whom the estate devised to him may have been taken, for the payment of debts or expenses; and the Probate Court, when distribution is made, shall, by decree for that purpose, settle the amount of the several liabilities and decree how much each person shall contribute.

At common law it is the settled rule that all devises of real estate are to be regarded as specific. "Every devise of land is specific. Every legacy of personal estate is not, because personal fluctuates and varies. Land does not, for no more passes by a will than the testator had at the time of making his will." (*Forrester* v. *Lord Leigh*, 1 Amb. 173.) "Every devisee of land is as a specific legatee, and should not be broken in upon or made to contribute toward a pecuniary legacy." (*Clifton* v. *Burt*, 1 P. Williams, 679.) [This case also shows that a specific legacy and a devise of land, which is in its nature specific, stand upon the same footing as to contribution to pay a pecuniary legacy; and that neither contribute, for the reason that they are specific.] "Every devise of land, whether in particular or general terms, must of necessity be specific from this circumstance—that a man can devise only what he has at the time of devising, * * * but it is quite different as to personal estate." (*Howe* v. *Earl of Dartmouth*, 7 Ves. Jr. 147; *Milnes* v. *Slater*, 8 Ves. Jr. 305; Redf. on Wills, Pt. II, 471.) The case of *Spong* v. *Spong* would seem, at first view, to make an exception, when the will, in express terms, makes it residuary. (1 Dow & Clark, 377; 3 Bligh, N. S. 102.) But the exception seems to be repudiated and the case explained on other grounds in *Mirehouse* v. *Scaife*, 2 My. & Cr. 695. A devise of real estate, then, is always regarded as specific; and it is said that this must be so of necessity, for no lands will pass except such as the testator has at the time he makes his will. After-acquired lands will not pass, but after-acquired personal estate does pass. "The devise of one's household goods will pass all household goods

that the testator has at the time of his death; contra of a devise of all one's lands; for that will pass only the lands which the testator then had. But household goods are always changing and perishing; and, therefore, the will as to personal estate shall relate to the time of the testator's death; otherwise it would be very inconvenient, for then a man must make a new will every day." (*Masters* v. *Masters*, 1 P. W. 424.)

A bequest of goods in a particular house, or at a particular place—as in a particular county or town—is specific. (See authorities before cited.) So of lands, for similar reasons, owned at a particular time, as at the date of the will. By a sale of the lands or any portion of them owned at the date of the will, the result to the devise is the same as when an article of personal property specifically devised is adeemed—it is gone. And this is one of the criteria of a specific legacy or devise. Other lands purchased with the moneys derived from the sale cannot be substituted. A republication of the will is necessary to pass them. So any change, alteration or remodelling of the estate extinguishes the devise. A devise of land is, therefore, specific, and this fact, and the reasons upon which it is grounded, are followed by important consequences, bearing upon the construction of the sections under consideration. The fact that a devise of land is always specific seems to be the real reason for placing lands devised after lands descended —in fact, in the class to be last charged with debts. Says Judge Redfield in his recent work on wills: " The most obvious and the chief reason why descended estates have been held liable before devised estates is that every devise of real estate is regarded as specific." (Pt. II, 870, par. 20.) Specific legacies and specific devises, therefore, stand upon the same footing, and for the reason that they are both specific, and, in reality, belong to the same class. Neither is to be charged till all the rest of the estate, both real and personal, is exhausted. So, also: " Where the devise of the personal estate, and also of the real, is specific, both must contribute to the payment of debts pro rata." (Redf. on Wills, Pt. II, 872, par. 23 ; *Long* v. *Short*, 1 P. Will. 403.) In *Long* v. *Short*,

the Lord Chancellor held that, since the Statute of Fraudulent
Devises, lands in fee in England are equally subject to debts
by specialty in the hands of the devisee, as leases in the
hands of the executor or legatee to debts by simple contract
at common law.   There was a specific bequest of a leasehold
interest to one, and a devise of lands in fee to another, which
was of course specific.   Both were, therefore, under the stat-
ute, equally subject to the specialty debts, and in that respect
stood on the same footing.   There being a deficiency of assets,
the question was upon which the debts should be charged,
and with respect to the specialty debts, " to prevent the dis-
appointment of the testator's intentions, the Court thought it
reasonable that the devisee of the fee simple estate and the
devisees of· the lease and annuity should each contribute to
the debts by specialty in proportion to the value of the respec-
tive premises;" for " each being equally specific devises, it
would, in this case, be an equal disappointment of the testa-
tor's intent to defeat either by subjecting it to the testator's
debts."   (1 P. W. 403.)   Thus, it is seen, that when there is ·
a specific bequest of personalty, and a specific devise of land,
and by aid of a statute as to the latter, both were equally lia-
ble to be charged with a certain class of debts, the Court,
without any further statutory provision, thought they should
be required to contribute pro rata, from the fact that both
were specific, and in that respect stood upon the same footing.
If this is the necessary result from the conditions named, it
would also seem to follow that if real estate should, by any
change in the law, be made assets in the hands of the executor
for the payment of all the debts of the testator, and a devise
of real estate be made general instead of specific, as it neces-
sarily was at common law, then a general bequest of person-
alty, and a general devise of realty, would also stand upon an
equal footing, and, on similar grounds, ought to contribute pro
rata.   That is to say, both in such cases would be assets in
the hands of the executor which might, if necessary, be applied
to the satisfaction of the debts ; both devises would be gen-
eral, and no specific intent would be manifested by the testator

that one, rather than the other, should be first charged, and both would stand in the same position.

Under our statute, if necessary for the purpose, all the estate of the testator is made assets in the hands of the administrator for the payment of all debts of every kind, whether simple contract, specialty debts, or otherwise, or whether charged upon particular estates or not. One class of creditors is not to look to the executor alone, and another class, in default of assets in the hands of the executor, is not obliged to follow the heir, devisee or specific legatee. The entire estate, real and personal, is liable in the hands of the executor to the charge of all the debts. Again—section twenty-two of the Act concerning wills provides that " any estate, right or interest in land acquired by the testator, after the making of his or her will, shall pass thereby and in like manner as if it passed at the time of making the will, if such shall manifestly appear by the will to have been the intention of the testator." (Belk. Prob. Act, 211.) Now a will made under this provision, by which a party should devise all the land of which he should die seized or possessed, it is obvious, would have none of the characteristics before stated of a specific devise. A party might sell and convey land owned at the date of the will, and with the proceeds purchase others, and repeat the operation continually, and those lands, owned at the moment he should happen to die, would pass by the will—would take the place of those conveyed. Personal and real estate would stand upon the same footing in this respect—a devise of all one's personal, and all of one's real estate of which he should die possessed, would be equally general, and operate precisely alike. The grounds upon which a devise of real estate was held to be always specific have ceased to exist. Judge Redfield says, with respect to the rule that all devises of real estate are necessarily specific : " But this only extends to the case of countries where the testator can only dispose by will of such real estate as he is seized of at the date of his will, and not where, as by the recent English statute, and those of most of the American States, one may dispose of all his real estate at

the time of his decease, although acquired subsequent to the date of the will. In such cases the residuary clause in the will operating upon subsequently acquired land, no devise of real estate will be regarded as specific unless it contain a description of the estate sufficient to enable the devisee to identify the same." (Redfield on Wills, Pt. II, 870, note 35.) He cites no authority, but obviously this must be so, when we consider the definition of specific devises already given.

We may have, then, under our statute, the condition of things before supposed, lands and personalty, both being assets in the hands of the executor, liable to all the debts, and both generally devised, and, therefore, like specific legacies and devises, chargeable with the same debts, standing upon precisely the same footing, so far as the reasons for charging them pro rata are concerned. We should, therefore, naturally expect that the Legislature, after having gone thus far, would go still further, and in case of such general devises of both personal and real estate, wherein the testator has not seen fit to indicate any preference for one class of devisees over another, provide for a pro rata contribution. Especially so in a country like this, where real estate is regarded with little more favor than personalty. And we think this is precisely what has been done in section one hundred eighty of the Probate Act, before quoted. It having been provided in the Act concerning wills, that there might be general devises of real, as well as personal estate, the first part of the section, that "the estate, real and personal, given to legatees or devisees, shall be held liable to the payment of debts   *   *   *   in proportion to the value of the several devises or legacies," manifestly refers to such general devises; for it immediately thereafter adds, "except that specific devises or legacies may be exempted, if it shall appear to the Court necessary to carry into effect the intention of the testator, if there be other sufficient estate;" thus still recognizing the right of the testator to make his devises or legacies specific, and thereby exonerate them, providing his estate is sufficiently ample to admit of such devises. Indeed, it would seem that a devise of

land would still be specific under section twenty-two of the Act concerning wills, unless it should manifestly appear by the will to be the intention of the testator to pass after-acquired lands. Section one hundred eighty-one is merely supplemental to the last, and provides that, when the estate devised to one devisee or legatee has been appropriated to the payment of the debts or expenses, he shall be reimbursed to the extent which he has improperly suffered by pro rata contributions from the others to be adjusted by the Court.

The will now in question is very brief, and very general in its terms. The testator bequeathed all the personal property and "one half of all the real estate of which" he should "die possessed," to the respondent, and made him executor, and the remaining half of the real estate to the appellants. There is nothing said about debts, no indication of any desire or intention that one class of devisees should be charged with the debts rather than the other. The devises are all general. The testator must be presumed to have known the law, and the consequences which would follow a want of being more specific, and to have intended the consequence which the law attaches. We think that the real and personal estate devised must contribute pro rata according to the provisions of section one hundred eighty. It is the precise case provided for in that section. Indeed, the consequence would, perhaps, have resulted from the statutory provision authorizing general devises of real property without the provision expressly made in section one hundred eighty.

Some of these questions were not passed upon by the Probate Court, and do not properly arise in the present stage of the proceedings, but their determination is necessary to a proper distribution of the estate about to be made, and they would, doubtless, soon appear here again on appeal by one side or the other; and the parties have presented the questions, and expressed a desire to have them disposed of now.

There being a large amount of personal property of the estate in the hands of the executor applicable to payment of the debts, the debt secured by mortgage, as between the lega-

tee and devisees, is not all payable out of the rents of the real estate mortgaged, and the accounts of the executor do not show the proper amount of moneys on hand subject to distribution. The exception on this point is well taken, and ought to have been sustained.

Order overruling exception reversed and cause remanded for further proceedings.

RHODES, J., concurring specially:

I concur in the judgment on the ground that the statute furnishes the rule of decision of the point in question.

SANDERSON, J., concurring specially:

Sections fifteen and twenty-two of the Act concerning wills, and sections one hundred and fourteen, one hundred and fifteen, one hundred and sixty-three, one hundred and seventy-six, one hundred and seventy-seven, one hundred and eighty, and one hundred and eighty-one of the Act concerning the settlement of the estates of deceased persons, supply the law applicable to the general subject, and section twenty-two of the former and one hundred and eighty of the latter Act prescribe the rules applicable to the special facts of the present case. By section twenty-two of the Act concerning wills, lands acquired subsequent to the publication of the will may be devised in this State, and, by reason of this provision, devises of real estate are put upon the same level with devises of personal estate, with respect to the question whether they are to be deemed specific or general, when the legal effect and operation of a given will comes to be determined.

By the one hundred and eightieth section of the Act regulating the settlement of the estates of deceased persons, it is provided that specific devises or legacies shall be exonerated from the payment of debts, if the remainder of the estate is sufficient for that purpose. A testator may in terms charge a portion of his estate with the payment of his debts, or he may

in terms exonerate a portion, leaving the remainder to be used for that purpose. In such a case the provisions of the will furnish the rule of administration, and are to be observed so far as the exigencies of the case will permit. (Sec. 177.) In view of these provisions of the statute, the questions presented by a case like the present are : First, does the will in terms make any provisions for the payment of the debts? and second, are there any specific devises or legacies which are to be exonerated from the payment of the debts if the exigencies of the case will permit ?

It is clear, on inspection, that the will in this case makes no provision for the payment of debts in terms, for nothing is said upon that subject. It is also obvious that it contains no specific devises of personal or real estate. The will disposes of the entire estate, real and personal, of which the testator may be possessed at the time of his death. No part of it is distinguished in any manner except by the terms real and personal. The latter, whatever it may chance to be at the date of the testator's death, is devised in general terms to his brother Selim. One half of the former, whatever it may chance to be, is also in general terms devised to Selim, and the remaining half to the other parties named, share and share alike. To hold that these or either of them are specific devises within the meaning of the one hundred and eightieth section, and therefore exonerated from the payment of debts, would be to hold that every devise is specific unless accompanied by an explanatory statement that it is not so intended. Such being the true interpretation of the will, it follows that the debts are to be paid in the mode provided by the statute where such are the conditions.

By the one hundred and fifteenth section of the Act regulating the settlement of the estates of deceased persons, it is provided that the personal estate shall be first chargeable with the payment of the debts, expenses of administration and allowances to the family of the deceased, and, if the personal property is insufficient for that purpose, that the real estate,

or so much thereof as may be necessary, may be sold in the manner provided by law. To this end the possession of the entire estate, both real and personal, and the accruing rents and profits of the former, is given to the executor or administrator until the final settlement of the estate, or until the estate has been delivered to the heirs or devisees by order of the Court, which may be done before final settlement, as provided in sections two hundred and fifty to two hundred and fifty-seven, both inclusive. (Sec. 114.) Such is the general rule, and it indicates the general policy and intent of the statute. This general rule is subsequently modified to suit special conditions. If any part of the real estate has to be sold, and a portion of it has been devised and not specially charged with the payment of debts, and a portion has not been devised, the latter is to be first sold. (Sec. 163.) So the order in which the estate is to be applied in the payment of debts, under the statute, is : First, personal estate ; second, land specially charged with the payment of debts ; third, land which has not been devised and is taken by the heirs ; and fourth, land devised.

The claim of the respondent in this connection, that the rents and profits of the real estate, coming in subsequent to the death of the testator, are personal property, in the hands of the executor or administrator, within the meaning of the foregoing provisions of the statute, is without foundation. Under the Statute of Descents, and under the will, if there is one, if not otherwise provided, the entire estate, both real and personal, with all accretions, vests in the heirs and devisees immediately on the death of the testator or intestate, subject only to the lien of the executor or administrator for the purposes of administration, and hence, if not required for that purpose, the subsequent rents and profits go to the party who takes the land from which they issue. Undoubtedly, after the personalty, the rents and profits must be exhausted before the land can be sold ; for although, so far as I have been able to discover, the statute contains no express provision to that effect, yet an intent not to sell the lands, except as a last

resort, is shown by the whole tenor of the Act. This intent is especially shown by the provisions of sections two hundred and fifty to two hundred and fifty-seven, both inclusive, where it is provided that the heirs, devisees and legatees may be put in the possession of their respective shares upon their giving bonds for the payment of their proportion of the debts, in which event, of course, the executor or administrator ceases to be entitled to the possession of the land or its rents, and thereafter each heir, devisee or legatee comes into the perception of the rents which issue from his share.

Where, as in the present case, the entire estate, both real and personal, has been devised without any provision in the will as to the payment of debts, the course to be pursued is described in the one hundred and eightieth section. It is there provided that : " The estate, real and personal, given by will to any legatees or devisees shall be held liable to the payment of debts, expenses of administration and family expenses, in proportion to the value or amount of the several devises or legacies, except that specific devises or legacies may be exempted, if it shall appear to the Court necessary to carry into effect the intention of the testator, if there shall be other sufficient estate." As we have already seen, the will contains no specific devises or legacies, and it results that the devisees under the will, or rather their respective shares, must contribute to the payment of the debts and expenses in proportion to their value.

For these reasons I concur in the judgment.