THOMAS TITUS, Executor of REV. HENRY WHITE, deceased,

*vs.*

JOHN HENRY McLANAHAN, YELVERTON McLANAHAN, SARAH ANNE McLANAHAN, JAMES REED and SALLY E., his wife, JOHN D. WHITE, EDWARD WHITE and KING V. D. WHITE.

*New Castle, Feb. T.* 1859.

Bequest of a part of the sum due upon an obligation to the testator, *held* to be a specific legacy; and that, upon the insolvency of the debtor, the legatees are not entitled, in equity, to have the legacy paid out of the general assets.

BILL OF INTERPLEADER.—This bill was filed by the ex-

ecutor of the last will and testament of Rev. Henry White, deceased, for instructions touching the construction of a bequest to three of his grandchildren, viz: John Henry McLanahan, Yelverton McLanahan and Sarah Anne McLanahan. The bequest was as follows:—

"*Item* 3*d.* Whereas my son John F. J. White is indebted to me on two several obligations in my favor, both dated September 21st, 1847, one being for the real debt of three thousand seven hundred and ninety-two dollars and ninety cents, and the other for two thousand two hundred and forty-one dollars, with interest from those dates, it is my will,and I hereby forever release and discharge my said son John F. J. White, his executors and administrators, of and from the payment of the first named obligation for three thousand seven hundred and ninety-two dollars and ninety cents, with all the interest accrued thereon at my death; and I also release and discharge my said son, his executors or administrators, of and from the payment of one equal fourth part of the principal and interest which shall be due and unpaid upon the second named obligation for two thousand two hundred and forty-one dollars,at my decease; he remaining, however, liable to pay the other three-fourth parts of the principal and interest of the last named obligation, as hereinafter directed. And with respect to the said three-fourth parts of the principal and interest which shall be unpaid upon the said last named obligation, at my decease, I give and bequeath the same to my three grandchildren, the children of my deceased daughter, Elizabeth R. McLanahan, viz: John Henry, Yelverton and Sarah Anne, equally to be divided among them; *provided*, that if any one or more of my said grandchildren shall die under the age of twenty-one years, without leaving lawful issue,then the share which would have been taken by any such deceased grandchild shall vest in the survivors, equally to be divided between them. I direct that payment of the said three-fourth parts of the last named obli-

gation by my son John F. J. White shall not be enforced otherwise than in three equal annual installments, the first to be payable at the expiration of one year after my death. If, at my decease, any of said grandchildren should be under age, I direct that the share of such grandchild or grandchildren shall be receivable by a guardian or guardians of such grandchild or grandchildren, who shall keep the same invested in good securities, together with the interest accruing thereon; and upon the arrival of said grandchild or grandchildren, or either of them, at twenty-one years, shall pay to him or her, his or her share, as aforesaid; or, upon the death of either under age and without issue living at his or her decease, shall pay the same to and among the survivors of said grandchildren, equally as before provided. I expressly direct that no part of any money to which my said grandchildren shall become entitled, under my will, shall come into the hands of their father, as guardian, by loan or otherwise. I also direct that if my son John F. J. White shall make any charge or claim against my said grandchildren, or either of them, for any matter or thing previous to the death of their grandmother, Lucy McLanahan, such charge or claim shall be deducted from the amount above released to him upon said obligations; and he shall be liable to pay the amount of such charge or claim, in addition to what he would otherwise be liable to pay upon said obligations. The first named obligation I direct my executor to deliver up cancelled to the said John F. J. White, upon his releasing any and all claim or charge against my said grandchildren as aforesaid; and the second obligation I direct my executor to assign and deliver to the said grandchildren, or their guardian or guardians, as the case may be."

The will in question further devised and bequeathed all the residue of the testator's estate to four other of his

grandchildren, viz: Sally Elizabeth White, wife of James Reed, John D. White, Edward White and King V. D. White.

The bill alleged that, pursuant to the direction of the will, the executor had assigned, by a written indorsement, and had delivered the obligation of John F. J. White for $2241.00, in the will mentioned, unto John Henry McLanahan, and to the guardians of Yelverton McLanahan and Sarah Anne McLanahan respectively; that he had proceeded to settle the estate of the testator, and was about to pass his final testamentary account; that there would remain in his hands an unappropriated balance of about $3000.00; that since the assignment and delivery of the said obligation of John F. J. White to the legatees, for whose benefit the same was bequeathed, it had been discovered that the said John F. J. White was wholly insolvent, and that he was so insolvent at the time of such assignment; and no part of said obligation could be recovered from him; that the parties to whom such assignment was made now claimed to be paid out of the estate of the testator a sum equal to that portion of the sum due on said obligation bequeathed to them by the testator; which claim, if allowed, would diminish *pro tanto* the present unappropriated balance otherwise payable to the residuary legatees; whereas, the residuary legatees insisted that the bequest to the said John Henry, Yelverton and Sarah Anne was a specific bequest, such as did not entitle them, upon failure to recover it, to be reimbursed out of the general estate. The bill prayed the instruction of the Court.

The answer of John Henry McLanahan and of Elijah G. and Sarah A. McLanahan by their guardians, admitted generally the facts stated in the bill; but alleged that the assignment by the executor to them of the obligation of John F. J. White was transmitted by mail and was not formally delivered and accepted; that, having heard, by

rumor, of the precarious financial condition of said White, these defendants refused to return to the executor a release on account of their legacy, as they were requested to do, but sent to him a bare acknowledgment of the receipt of the paper. These defendants insisted that the intent of the testator, who was their grandfather, was to bequeath to them something really beneficial; and that, upon a just construction of the said bequest, so as to effectuate the true purpose of the testator, it should be held to be, not a specific legacy in a technical sense, but a legacy of quantity in the nature of a specific legacy, that is to say, of so much money charged upon a particular fund as a convenient means of payment, which failing, the legacy ought, in equity, to be made up out of the general assets.

The answer of the defendants, James Reed and wife, John D. White, Edward White and King V. D. White, admitted the facts, as set forth in the bill, so far as they were informed; and, insisting that the bequest to the other defendants was of a specific legacy, claimed the whole unappropriated balance now in the hands of the executor.

Depositions were taken proving the insolvency of the John F. J. White at the time of the assignment of his obligation to the defendants, John Henry, Yelverton and Sarah Anne McLanahan.

The cause came before the Chancellor, at the Feb. T. 1859, for a hearing upon the bill, answers, exhibits and depositions.

*E. G. Bradford,* for the residuary legatees, relied upon the general rule respecting specific legacies, as being applicable, as well to the bequest of a debt as of a chattel or stock. The use of the word " my," " owing to me," " due to me," &c., or words of like import, are considered as rendering the legacy specific. 1 *Roper on Leg.,* 204. The

present bequest is of that character; it is clearly a disposal of the identical debt and not a bequest of money, with a reference to the debt merely as a fund first to be applied. *Ambler* 309; 1 *Eq. Cas. Abr.* 302; 2 *Ves. Sr.* 563, 623; 4 *Ves. Jr.*, 555, 568, 750; 3 *Bro. Ch. R.* 160; 2 *ib.* 108; 5 *Ves. Jr.* 461; 2 *Madd. R.* 280; 1 *Jac. & Walk.* 302.

*J. C. Patterson*, for the McLanahan legatees.

General or pecuniary legacies are favored at law rather than specific ones; 4 *Bro. Ch. R.* 350,*note* (c); 22 *Pick R.* 299; and no legacy is held to be specific, unless demonstrably so intended, 4 *Ves. Jr.* 748, *note* (a). The general equity is in favor of the legatee whose legacy has failed from unforeseen causes. Where, therefore, a gift is made with reference to some specific fund, any indications of intention that it shall be paid have been held to take it out of the general rule. In *Deane vs. Test*, 9 *Ves. Jr.* 145, a bequest of £2000, " to be paid out of the 4 per cents," was held to be pecuniary. So, also, in *Kirby vs. Potter*, 4 *Ves. Jr.* 748, a legacy of £1000 " out of my Reduced Bank Annuities;" and in *Wilson vs. Brownsmith*, 9 *Ves. Jr.* 180, a legacy of " £200 four per cent. consolidated Bank annuities," was held not to be specific. In *Gillaume vs. Adderley*, 15 *Ves. Jr.* 384, a legacy of £5000, " now vested in the East India Company's bonds," was held not to be specific but general. So, in *Lambert vs. Lambert*, 11 *Ves. Jr.* 607, a bequest to a younger child of £12000 " of my funded property to be transferred in his name," &c. In *Roberts vs. Pocock*, 4 *Ves. Jr.* 150, legacies to be paid out of a specific security, which failed, were held general under the circumstances.

In the present case the relationship of the legatees to the testator and the whole scope of his will lead to the conclusion that he intended them a benefit not to be de-

feated by the insolvency of the debt which he designated as a fund for payment of the legacy.

THE CHANCELLOR, after holding the question under consideration, expressed the opinion that the bequest of the debt was specific, and decreed accordingly.