## TRUSTEES OF THE UNITARIAN SOCIETY IN HARVARD *vs.* LARKIN T. TUFTS.

Worcester.    October 3, 1889. — February 26, 1890.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Will — Specific Legacy — Ademption.*

A testatrix, who owned twenty shares of certain railroad stock at the time of making her will, bequeathed "ten shares of the stock" to a religious society, provided it should keep a cemetery lot in order, and ten shares to another legatee, and gave none of it to any one else. The rest of the will disposed of different items of her property as it then stood, and of the proceeds of "the balance of my stock as per my stock-book, my furniture, and all other property not otherwise disposed of by me." Subsequently, she sold the twenty shares and reinvested the proceeds, after which, by a codicil revoking a pecuniary legacy, she republished the will. *Held,* that the legacy of the stock was specific, and was adeemed by the sale thereof.

CONTRACT for a legacy. Trial in the Superior Court, without a jury, before *Staples,* J., who reported the case for the determination of this court, in substance as follows.

Mary E. Pearson, the widow of William B. Pearson, died on January 2, 1887, leaving a will, which was duly admitted to probate, and of which the defendant was the executor. The will, which was dated October 21, 1882, after gifts of pecuniary legacies to various nephews and nieces, and of " my stable " and of a " mortgage note which I now hold " to her brother and sister respectively, contained the following provisions:

" Item 4. I give to the Trustees of the Unitarian Society of Harvard, Massachusetts, ten shares of the stock of the Worcester

and Nashua Railroad Company, the income thereof to be applied to the payment of the salary of the pastor of said society, for the time being, with the provision that said trustees shall out of said income keep the cemetery lot belonging to the Pearson family in said town in order, and keep the shrubbery from over-topping the monument in said lot, and paint the lettering on said monument once in ten years, to them and their successors.

"Item 5.   I give to the Universalist Society of Skowhegan, Maine, ten shares of the stock of the Worcester and Nashua Railroad Company, the income thereof to be applied towards the payment of the minister's salary for the time being, to them and their successors." Here followed a gift of " a thousand-dollar eight per cent bond of the Union Pacific Railroad " to a friend, and another gift of five thousand dollars " by me deposited " in a trust company to her brother-in-law, upon a certain trust.

"Item 8.   The balance of my stock as per my stock-book, my furniture, and all other property not otherwise disposed of by me, I would have sold and the proceeds thereof disposed of as follows." Then followed a division of the residue of the testatrix's estate among her sister and three charitable organizations. The remaining provisions of the will covered a great variety of gifts of various articles of personal property, consisting of portraits, jewelry, &c., to the testatrix's friends and relatives.

On January 1, 1887, the testatrix executed a codicil to the will, reciting, " which will I hereby ratify and confirm in all respects save as the same may be changed by this instrument," in which she revoked a pecuniary legacy to a nephew and gave it to a niece. The testatrix had no children, and the nearest relative surviving her was her sister. Her husband was buried in the family lot in Harvard, referred to in the will, and at her request she was buried in the same lot. At the date of the will she owned twenty shares of the Worcester and Nashua Railroad Company, but she sold them in 1885 and reinvested the proceeds. After the payment of debts and legacies there remained a considerable estate in the hands of the executor.

The judge ruled that the legacy in the fourth clause of the will was not a specific legacy, and was not adeemed by the sale

of the stock, and found and ordered judgment for the plaintiff . for an amount which it was admitted the plaintiff was entitled to recover, if at all. If the ruling was correct, the judgment was to be affirmed; otherwise, such judgment was to be entered as might be deemed proper.

*F. A. Gaskill*, for the plaintiff.

*J. H. Butler*, for the defendant.

HOLMES, J. We must hold the legacy in the fourth clause of the will specific, although we cannot but fear that, if the testatrix had been fully advised of the consequences of making a legacy specific, she would have changed her will.

The legacy is of " ten shares of the stock of the Worcester and Nashua Railroad Company." By the fifth clause of the will, the testatrix gives ten shares to another legatee, and she gives none of it to any one else. At the time of making her will, she owned twenty shares of the stock. We will assume, for the purposes of our decision, that the mere coincidence, between the amount given and the amount owned would not make the legacy specific, both being round numbers. See *Tifft* v. *Porter*, 8 N. Y. 516; *Bronsdon* v. *Winter*, 1 Ambl. 57; *Purse* v. *Snaplin*, 1 Atk. 414; *Robinson* v. *Addison*, 2 Beav. 515, 520. This might be admitted, perhaps, without at all questioning *White* v. *Winchester*, 6 Pick. 48. But *White* v. *Winchester*, and *Metcalf* v. *Framingham Parish*, 128 Mass. 370, 373, show that such a coincidence is an important fact to be considered in connection with the language of the will. See *Johnson* v. *Goss*, 128 Mass. 433, 436.

Turning to the language, we find nothing conclusive in the fourth clause. The word " the " preceding " stock " is ambiguous, and may as well refer to the stock of the company in general as to the stock owned by the testatrix. But if " my " were used instead of " the," the legacy would be specific. *Metcalf* v. *Framingham Parish*, 128 Mass. 370, 373. *Foote, appellant*, 22 Pick. 299, 303. See *Johnson* v. *Goss*, 128 Mass. 433, 435. The same principle applies, upon equally strong grounds, when a testator, after giving legacies of stock generally, gives the rest of the stock " standing in my name." *Sleech* v. *Thorington*, 2 Ves. Sen. 560. See *Metcalf* v. *Framingham Parish*, 128 Mass. 370, 372; *Millard* v. *Bailey*, L. R.

1 Eq. 378; Theobald on Wills, (3d ed.) 100. In this case the eighth clause of the will gives " the balance of my stock, as per my stock-book, my furniture, and all other property not otherwise disposed of by me." This language, taken with the facts, makes it pretty plain that the stock disposed of by the testatrix in the fourth clause was stock then belonging to her; and the conclusion is fortified by the other clauses, which show that the general course which she adopted in making her will was to take up different items of her property as it then stood, and to dispose of them. The words used describe a specific legacy too clearly to be controlled by the fact that the proviso discloses a motive which might be conjectured to be independent of the form in which the property was invested.

The republication of the will by the codicil does not change or enlarge the meaning of the words of the will, on which the plaintiff must rely in order to recover the legacy. It follows that the legacy was adeemed by the sale of the stock. *Pattison* v. *Pattison*, 1 Myl. & K. 12. *Macdonald* v. *Irvine*, 8 Ch. D. 101, 108. See *Sidney* v. *Sidney*, L. R. 17 Eq. 65, 68.

　　　　　　　　　　　　　　　　*Judgment for the defendant.*