CHARLES M. THAYER, executor, vs. JAMES P. PAULDING
& others.

Worcester.   September 29, 1908. — October 22, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Devise and Legacy*, Specific or general.

The will of one, who, at the time it was made and at the time of his death, owned
three hundred seventy-five shares of the capital stock of a certain corporation,
contained the following provision: "I give and bequeath to my steadfast
friend . . . [P] . . . one hundred twenty-five shares of the capital stock of . . .
[the corporation] . . . together with all the rights and privileges which now or
hereafter appertain to the same." Within a year after the death of the testator,
dividends were declared and paid upon the three hundred seventy-five shares of
stock in the hands of the executor and the portion thereof corresponding to the
one hundred twenty-five shares was $825. The executor brought a bill in equity
for instructions as to whether or not such $825 should be paid to P. *Held*, that
the $825 should be paid to P., since the words, "together with all the rights
and privileges which now or hereafter appertain to the same," indicated that
the testator meant the legacy to be specific, and required that the one hundred
twenty-five shares of stock should be set apart and, at the end of a year from
the testator's death, should be turned over to the legatee with any increment
which had accrued upon them after the testator's death.

BILL IN EQUITY, filed in the Supreme Judicial Court for the
county of Worcester January 25, 1907, by the executor of the
will of Edward Greene, late of Worcester, alleging that, at
the time of his death the testator owned three hundred seventy-
five shares of the capital stock of the Rand Drill Company, that,
within a year after the death of the testator, such dividends had
been paid upon such stock that the amount which had been paid
as dividends on one hundred twenty-five shares was $825.16,
that the will contained the following clause: "I give and be-
queath to my steadfast friend James P. Paulding, of 10 West
10th Street in the City of New York, if he is living at the date
of my death, one hundred twenty-five (125) shares of the capital
stock of the Rand Drill Company of New York, a corporation
having a usual place of business in Mt. Pleasant in the State of
New York, together with all the rights and privileges which may
now or hereafter appertain to the same." The bill prayed for
instructions as to whether any part or the whole of the $825.16
should be paid to James P. Paulding.

There was a hearing before *Rugg,* J., who reserved the case for determination by the full court.   The facts are stated in the opinion.

The case was submitted on briefs.

*R. B. Dodge & W. J. Taft,* for the defendant Paulding.

*J. O. Sibley,* for the residuary legatees. ·

KNOWLTON, C. J.   In the will of Edward Greene there is a legacy to James P. Paulding of " one hundred and twenty-five shares of the capital stock of the Rand Drill Company of New York, a corporation, . . . together with all the rights and privileges which may now or hereafter appertain to the same."  Within less than one year after the death of the testator, dividends on this stock amounting to $825.16 were paid to the plaintiff as executor, and the question presented is whether these dividends should be paid to the legatee, or used as a part of the general funds of the estate.   This involves the question whether the gift of this amount of stock is a specific legacy or a general legacy.   If it is a specific legacy, it covers this number of shares of stock held by the testator at the time of making his will, together with all their accretions from the time of his death to the time when the legacy should be turned over by the executor to the legatee, namely, to the expiration of one year from the time of the testator's death.   If it is a specific legacy, there would have been an ademption of it which would have left the legatee with nothing, if the particular property had ceased to exist, or been disposed of by the testator in his lifetime.   On the other hand, if it is a general legacy, it gave the legatee a right which vested on the death of the testator to have this number of shares delivered to him by the executor at the expiration of a year from the death of the testator, and this right had no reference to any particular shares.   If a testator making such a gift had no such shares at the time of his death, or if he had them and for any reason the executor saw fit to sell them soon afterward, in the settlement of the estate, it would be the executor's duty to procure them by purchase before the expiration of a year from the time of the testator's death and then to deliver them to the legatee.   Such procurement and delivery would satisfy the requirements of the will.  *Johnson* v. *Goss,* 128 Mass. 433, 436.

It is agreed by the parties that at the time of the execution of his will the testator owned three hundred and seventy-five shares of this stock, and continued to own them to the time of his death. If we consider that part of the language which purports only to give the stock, disregarding the words " together with, etc.," we think it plain on the authorities that they did not create a specific legacy. The number given was only a part of a larger number of shares that the testator owned. See *White* v. *Winchester*, 6 Pick. 47, 52. There was no specification of what part, otherwise than by the quantity. There is no designation, such as the use of the word " my," to confine the gift to any particular shares. *Johnson* v. *Goss*, 128 Mass. 433, 436. *Slade* v. *Talbot*, 182 Mass. 256. *Harvard Unitarian Society* v. *Tufts*, 151 Mass. 76. *Foote, appellant*, 22 Pick. 299. *Tomlinson* v. *Bury*, 145 Mass. 346. There is no bequest to the same legatee of both stock and money, such as sometimes has been much relied upon as showing an intention to make the legacy specific. See *Metcalf* v. *Framingham Parish*, 128 Mass. 370. See upon the general subject, *Tifft* v. *Porter*, 8 N. Y. 516 ; *Sponsler's appeal*, 107 Penn. St. 95. See *Snyder's estate*, 217 Penn. St. 71 ; *Dryden* v. *Owings*, 49 Md. 356 ; *Davis* v. *Cain*, 36 N. C. 304.

If this is to be treated as a general legacy, the question arises whether the words, " together with all the rights and privileges which may now or hereafter appertain to the same," enlarge the gift. We have already referred to the rule that an ordinary legacy is not payable until the expiration of a year from the time of the testator's death, and if the legacy is of money, no interest is payable upon it for that time, even if it is invested and interest upon it is received. *Kent* v. *Dunham*, 106 Mass. 586. *Ogden* v. *Pattee*, 149 Mass. 82. *Welch* v. *Adams*, 152 Mass. 74, 87. In the case of a mere general legacy of stocks, since a purchase by the executor and delivery to the legatee of the requisite number of shares at the end of the year would satisfy the requirements of the will, he would not be called upon to procure or pay over dividends previously declared and paid to the owner. In reference to such a general legacy the words above quoted from the will would add nothing. They would be nothing more than a tautological and unnecessary statement, meaning that the stock should be perfect in its qualities as stock,

without impairment in any way, and conveyed by a perfect title to give the legatee all the advantages that could belong to any owner. The words are more pertinent to a gift of a specific legacy than to a gift of a general legacy, although a gift of a specific legacy without these words would include all rights and privileges pertaining to the specific thing given, which accrued or existed after the death of the testator. They seem to point to some particular stock in the mind of the testator, referred to by the words "the same."

We regard the question, whether this last clause is sufficient to change what would otherwise be a general legacy into a specific legacy, as the only difficult question in the case. A very slight indication of an intention to give shares then in his ownership is enough to make the legacy specific in a case like this. On the whole, we think the words should be considered as referring to this number of shares of the stock then owned by the testator, and as requiring that they be set apart and, at the end of the year, turned over to the legatee with any increment accruing from them after the testator's death. All the language of the will should be considered together and given effect. We are of opinion that the testator intended by this clause to give a specific legacy. The dividends are to be paid to James P. Paulding.

*So ordered.*