[S. F. No. 6307.   Department One.—March 26, 1913.]

## In the Matter of the Estate of GERONIMA RUFFINO DE BERNAL, Deceased.

WILL—DETERMINING WHETHER DEVISE OR LEGACY IS GENERAL OR SPECIAL.—In this state, the question whether a testamentary gift is specific or general is to be determined by the same tests where the subject of the gift is real as where it is personal property.

ID.—DEVISE OF PART OF LAND SPECIFICALLY DESCRIBED — UNDIVIDED PART OWNERSHIP IN LAND DEVISED.—A devise of five acres of a specifically described tract of land containing about twenty-five acres, in which the testatrix owned merely an undivided three-fourths interest, is a gift by quantity, and should be construed to pass an undivided interest of full five acres of the tract, rather than simply an undivided three-fourths of five acres.

ID.—SPECIFIC DEVISE OF PART OF LAND INCLUDED IN LARGER TRACT.—
Where the testatrix left other property, much more than sufficient
in value to pay her debts and the expenses of administration, and
the disposing provisions of her will consisted entirely of such devise
made to her grandchildren and a residuary bequest to her son, the
devise must be regarded as specific.

ID.—EXEMPTION OF SPECIFIC DEVISE FROM PAYMENT OF DEBTS—MORT-
GAGE ON LAND DEVISED—INTENTION OF TESTATRIX.—Where such
grandchildren and son were the sole heirs of the testatrix, and the
will did not in terms provide for the payment of her debts, or in
any way refer to the same, and the aggregate amount thereof was
small when considered in connection with the condition and value
of all her property, and consisted almost entirely of a mortgage
given by the testatrix to secure her note on the tract of land from
which the specific devise to the grandchildren was made, and the
devise constituted only a small proportion of her property, the
will must be construed as manifesting the intention on the part
of the testatrix, within the meaning of section 1563 of the Code
of Civil Procedure, of exempting the specific devise from liability
for her debts and the expenses of administration, including the
liability for such mortgage indebtedness, and of imposing the en-
tire liability therefor on the residuum of the estate.

ID.—MORTGAGED LAND SPECIFICALLY DEVISED—EXEMPTION FROM LIA-
BILITY FOR MORTGAGE DEBT.—Where a mortgage lien was created
by the testator himself to secure his own debt, and at the time of
his death the mortgage is simply collateral security for the per-
sonal obligation, it is to be paid, as between executors, devisees,
legatees, and heirs, in the same manner as the general unsecured
debts of the deceased, in so far as the question from what prop-
erty of deceased it is to be paid is concerned, unless the will dis-
closes a different intent on the part of the testator.

ID.—FAILURE OF HOLDER TO PRESENT MORTGAGE CLAIM AGAINST ESTATE.
As between the executor and those interested in the estate it is
immaterial in this regard that the holder of the mortgage does
not present his claim against the estate, but prefers to rely entirely
on the future enforcement of his lien against the specific property
mortgaged.

ID.—RENTS OF LAND SPECIFICALLY DEVISED BELONG TO DEVISEE—EX-
EMPTION FROM PAYMENT OF DEBTS OR EXPENSES OF ADMINISTRA-
TION.—The title to the real property so specifically devised vested
in the devisees at the moment of the death of the testatrix, and
the rents thereof accruing subsequent to her death, for the purpose
of marshalling the assets, should be regarded as belonging to the
realty from which they were derived, and became the property of
the devisees, and could not be resorted to for the purpose of pay-
ing the debts or expenses of administration, or interest on the mort-

gage, until the fund primarily liable for such purposes, which in this instance was the residuum, had been exhausted. The taxes accruing on the property so devised should be borne by the devisees.

ID.—PROBATE COURT—DUTY TO MARSHALL ASSETS—DETERMINING PRIORITY OF LIABILITY FOR DEBTS—COMPELLING PAYMENT OF UNPRESENTED MORTGAGE DEBT.—It was within the power and was the duty of the court in probate to determine, as between the heirs, legatees, and devisees, all questions in regard to the marshalling the assets of the estate, the liability and exemption of the various properties thereof for the debts and expenses of administration, and to compel the executor to pay the mortgage covering the land so specifically devised, which had not been presented as a claim against the estate, from the fund primarily liable therefor.

APPEALS from portions of a decree of the Superior Court of the City and County of San Francisco settling the final account of an executor, and finally distributing the estate of a deceased person. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Sullivan & Sullivan and Theo. J. Roche, and John J. O'Toole, for Appellants.

Norman A. Eisner, for Respondent.

ANGELLOTTI, J.—These are appeals by various parties from portions of the decree of settlement of the final account of the executor of the will of deceased, and final distribution, which, by stipulation, have been brought to this court upon one transcript, and submitted for decision together.

The material facts are undisputed. Deceased died testate September 6, 1905, leaving her surviving as her only heirs, her son, appellant Jose Cornelio Bernal, who is the surviving executor of her will, and eight grandchildren, six of whom are the children of her deceased daughter Elodie Macdonald, and two of whom are the children of her deceased daughter, Jovita McKinnon, whom we shall designate hereafter as the Macdonalds and the McKinnons. She left valuable real property, one portion thereof being an undivided three-fourths interest in a tract of land in the city and county of San Francisco containing some twenty-five acres, known as the Italian Gardens. This at the time of her death was encumbered by a mortgage

given by her on January 28, 1903, to the Columbus Savings & Loan Society, a corporation, to secure the payment of her promissory note of the same date to said corporation, for thirteen thousand five hundred dollars, with interest at six per cent per annum, and no part of the principal sum of which note had then been paid. She also owned real property in San Mateo County, which was and still is an unencumbered part of her estate, and which exceeded in value the sum of fifty thousand dollars.

Two weeks before her death, viz., on August 23, 1905, deceased executed her last will, which was subsequently admitted to probate, and upon which the decree appealed from is based. She said nothing therein about her debts and made but two dispositions of property. In the first place, she gave, devised, and bequeathed to her said grandchildren, naming them, "share and share alike to each, five acres of that certain piece or parcel of land situate, lying and being in the city and county of San Francisco, state of California, bounded and described as follows," describing by metes and bounds the real property known as the Italian Gardens. Nothing was said therein as to the acreage of this tract. She then provided: "All the rest and residue of my estate, real, personal and mixed I give, devise and bequeath unto my son Jose Cornelio Bernal." With the exception of a request of her sister Fortuna as to the disposition of a portion of a ten acre tract in San Mateo County theretofore conveyed by her to such sister, the will contained nothing else except the appointment of said son and her sister Francisca to act as executors, without bonds.

The will was admitted to probate and the executors named appointed as such. On June 11, 1907, said Francisca died, and the son has ever since continued to act as sole executor.

During the administration but two claims against deceased were presented. They aggregated only $735.70 and have been paid. No claim was ever presented on behalf of the Columbus Savings & Loan Society on account of such note and mortgage. During the administration, the executor has paid on account of the principal, the sum of one thousand five hundred dollars, leaving twelve thousand dollars still due. He also paid interest in full to February 12, 1912, being $5,837.79. The note and mortgage are still subsisting obliga-

tions, and an action for the foreclosure of the mortgage is pending.

The one thousand five hundred dollars paid on account of the principal was one-half the sum received by the executor on the sale by him of the undivided three-fourths interest of deceased in two small portions of the Italian Gardens to the Ocean Shore Railway Company, containing 0.301 and 0.114 acres respectively, which have been released from the lien of the mortgage. No real property of deceased has been sold during administration other than the property just referred to.

Since the death of deceased, the executor has collected the sum of eight thousand dollars as rents from her undivided three-fourths interest in the Italian Gardens property, and has paid out for taxes levied thereon the sum of $1,967.52, leaving a balance of $6,032.48. No portion of this has ever been paid to any grandchild of deceased. All of said sum has been expended by the executor in paying interest on said mortgage, and debts of deceased and expenses of administration. All moneys coming into his hands have been so expended. In fact, it was necessary for the executor to waive the payment of his portion of the executor's commission, in order to close the estate without selling any more of the real property.

Pending the administration of the estate an action for the partition of the Italian Gardens tract was instituted in the superior court by some of those who were cotenants with deceased therein at the time of her death. All parties interested in the tract, including all those interested in the estate of deceased, were made parties to this action, and the same was tried and an interlocutory decree made and entered therein. By this decree the court in partition attempted to segregate and declare the respective interests under the will of deceased. No appeal was taken from this decree, and the time for appeal had elapsed when the matter before us was initiated in the probate court. A question as to the jurisdiction of the court in partition to give any judgment that could affect the right of the court in probate to determine for itself the rights among themselves of those claiming under the will entirely regardless of the interlocutory decree in partition, is raised and argued at some length by respective counsel, but

inasmuch as we are of the opinion that independent of the partition decree the property of deceased should have been distributed under the will to the respective parties in the manner and upon the terms specified in the partition decree, it is unnecessary to consider this question of jurisdiction. It may be assumed, for all the purposes of this decision, that the partition decree was ineffectual in so far as it attempted any segregation of interests under the will of deceased.

The foregoing being the facts, various questions arose on the hearing in the lower court between the Macdonalds and the McKinnons on the one hand, and the son of deceased on the other.

The lower court held that under the will the grandchildren, as claimed by them, were entitled to an undivided interest of full five acres of the Italian Gardens tract, rather than simply to an undivided three-fourths of five acres. This was also the conclusion of the court in partition. This conclusion is assailed in his brief in this court by counsel for the son. His appeal, however, is, under the terms of his notice of appeal, from specified portions of the decree only, and the portion of the decree awarding this interest to the grandchildren is not among the portions so specified. However, we are of · the opinion that the conclusion of the lower court on this point was right. The gift was one by deceased not of *her interest* in five acres, but one of *five acres* of a tract of land specified, a gift by quantity. The only description by metes and bounds was one of the larger parcel of land from which the five acres given were to be taken. So far as this matter is concerned we have no means of determining the intent of the testatrix other than the language she has used in her will, together with the fact that she owned an undivided interest in the tract equivalent to nearly nineteen full acres. The language here involved is very different from that used in the deed construed in *Adams* v. *Hopkins,* 144 Cal. 40, [77 Pac. 720], referred to by counsel for the son. The language there used by Wilson, an owner of about 673 acres undivided in a tract of nearly twenty thousand acres, was ''gives, sells and conveys all his *right, title and interest* . . . to three hundred and twenty acres of land to be taken out of his interest which he now holds in a certain tract of land,'' etc., and this court said: ''The deed does not purport to convey the specified

number of acres undivided, or an interest equal to that quantity of land, but only the interest of the grantor in three hundred and twenty acres, to be taken by the grantee in some part of the ranch other than 'where the said Wilson or any of his tenants are in possession.' '' In the will before us we have not a gift of the interest of the testatrix in any particular land or in any specified number of acres, but a gift of a definite number of acres.

The interest of the deceased in the Italian Gardens property was distributed by the lower court subject to the lien of the mortgage. It was accepted as a fact that a full five acres undivided in said property was four-fifteenths of the whole interest of deceased in the property. The court adjudged that the undivided interest of five acres distributed to the grandchildren should be subject to and liable for the payment of four-fifteenths of the balance of twelve thousand dollars principal due on the mortgage and four-fifteenths of the interest accruing from February 29, 1912, and that the interest distributed to the son should be subject to and liable for the remaining eleven-fifteenths of said principal and interest. All parties appeal from this portion of the decree, though we do not understand that counsel for the son claims error therein if the grandchildren were entitled to full five acres undivided instead of an undivided three-fourths of five acres, except in so far as he claims that the son should be reimbursed to the extent of four-fifteenths of the one thousand five hundred dollars paid by him on account of the principal of said mortgage. The grandchildren claim that the whole of said principal sum of said promissory note and mortgage and all interest accruing thereon since the death of deceased, should first be paid out of the interest of the son, before resort is had for such purpose to any portion of their five acres undivided.

The lower court found that the administration of the estate should have been brought to a close at the expiration of one year from October 5, 1905, and that consequently the grandchildren were entitled to their four-fifteenths' portion of the rents and profits since that date, less their proportion of the taxes and four-fifteenths of the amounts paid by the executor on account of interest on the note and mortgage, which would give them in the aggregate $194.76, or $24.34 each, and the

latter amount was distributed to each of them. They were held to be entitled to no part of the rents and profits prior to October 1, 1906, all of which were applied to expenses of administration, payment of taxes, and payment of debts (including interest on the mortgage debt). All parties appeal from this portion of the decree, but on widely different grounds. The son claims that there was no inexcusable delay in closing the administration, and that all of the rents and profits from the date of death of the deceased to the actual close of administration were in fact properly applied to the purposes above stated, in the absence of other personal property, leaving no balance for distribution. The grandchildren claim that as long as there was other property of the estate available for that purpose, none of the rents and profits accruing on their interest, received after the death of deceased, should have been applied to any of these purposes except the payment of taxes on their portion, and that they were entitled to receive from the estate on distribution, instead of an aggregate of $194.76, four-fifteenths of the rents and profits received by the executor for said property since the death of deceased, less four-fifteenths of the taxes paid thereon. Such receipts being eight thousand dollars, and the taxes $1,967.52, they would be entitled on this theory, as we figure it, to about one thousand six hundred dollars in the aggregate, instead of $194.76.

The varying contentions in regard to the questions we have stated are so interwoven that they will be considered together.

It was said in *Estate of Painter*, 150 Cal. 505, [11 Ann. Cas. 760, 89 Pac. 100], that in this state the question whether a testamentary gift is specific or general is to be determined by the same tests where the subject of the gift is real as where it is personal property. Section 1357 of the Civil Code declares: "A legacy of a particular thing, specified and distinguished from all others of the same kind belonging to the testator, is specific; if such legacy fails, resort cannot be had to the other property of the testator." It is urged that the devise to the grandchildren cannot be considered specific in its nature for the reason that the particular portion of the interest of deceased in the Italian Gardens tract that is to go to them is not specified and distinguished from the other portions of her interest. It is unquestionably specific to the

extent that it minutely describes the tract of land on which
the devise is to operate, and it is also clear that it possesses
one of the characteristics of a specific devise or legacy peculiar
to such a gift, viz.: that resort cannot be had to property of
the deceased other than her interest in the Italian Gardens
tract to satisfy it. The disposition here certainly partakes
more nearly of the character of a specific devise or legacy
than of any other disposition that we know of. And we do
not think that the reason advanced by the son against the
claim that the devise is specific is a sufficient answer to such
claim, under the circumstances here existing. The disposi-
tion was as specific as the nature of the subject permitted.
Testatrix was the owner simply of an undivided three-fourths
interest in a specified twenty-five acre tract of land, equiva-
lent, assuming such land to be of uniform value throughout,
to nearly nineteen full acres. She desired the grandchildren
to have five full acres thereof, which was practically five-
nineteenths of her interest, or, as it was agreed on the trial,
four-fifteenths thereof. The situation here is practically the
same as it would have been had she described the disposition
to the grandchildren as ''an undivided four-fifteenths of my
interest in'' the Italian Gardens property. Would the fact
that she had an undivided eleven-fifteenths in such property
over this disposition necessarily preclude the conclusion that
the disposition was specific? We think not. If we assume
that the devise is somewhat analogous to a bequest of a des-
ignated number of shares of stock in a particular corporation
by one who owns exceeding that number of such shares and
who does not describe the shares so bequeathed in such a way
that they can be distinguished from his other shares in the
same corporation, the son's case is not materially assisted.
Such a bequest may or may not be a specific bequest.
Whether it is or not depends upon the intent of the testator
as the same is manifested by the language he uses. If he
intended simply to give a certain number of shares in the
corporation, just as, in the case of money legacy, one gives
a certain number of dollars, it is not a specific legacy. As to
such a case it was held in a case cited by counsel for the
son that the mere fact that at the date of his will he had
shares of stock in such corporation to the extent designated
will not of itself make the bequest specific. (*Tifft* v. *Porter,*

8 N. Y. 516, 518.) But if he intended to give a specific and designated amount of *the very shares* in such corporation that he then owned, as, for instance, all of said shares, or one-half of said shares, or a designated number thereof, it is a specific legacy. This is recognized in the very case cited by counsel for the son. The following have been held to be specific legacies: "Ten shares of my Essex County National Bank stock" (*Moore, Executor* v. *Moore,* 50 N. J. Eq. 554, 561, [25 Atl. 403]); "One-half of all my stock" in certain railroads (*Loring* v. *Woodward,* 41·N. H. 391); "Ten shares of stock" of a certain railroad company, when subsequent clauses bequeath the balance of testator's stock in such company (*Harvard etc. Society* v. *Tufts,* 151 Mass. 76, [7 L. R. A. 390, 23 N. E. 1006]); a legacy of part of a sum due on an obligation (*Titus* v. *McLanahan,* 2 Del. Ch. 200); a certain number of oxen, horses, etc., to a wife "to be of her choice" (*Everitt* v. *Lane,* 37 N. C. 548); a bequest of five hundred dollars to a wife in personal property "such as she may select" (*Wallace* v. *Wallace,* 23 N. H. 149). (See, also, Page on Wills, secs. 768, 769; *Wood* v. *Hammond,* 16 R. I. 98, [17 Atl. 324, 18 Atl. 198]; *Crawford* v. *McCarthy,* 159 N. Y. 514, [54 N. E. 277].)

Such a situation as we have here presents a much stronger case in so far as any question of intent is concerned, than cases involving legacies of shares of stock ordinarily present, for it is recognized that in such cases it is often very difficult to determine the intent of the testator. But here it is beyond the realm of dispute that the testatrix intended to give to her grandchildren a specified undivided interest then owned by her in a designated parcel of land. This she singles out from all her property and gives to her grandchildren. She then proceeds as follows:

"All the rest and residue of my estate, real, personal and mixed, I give, devise and bequeath unto my son, Jose Cornelio Bernal." It seems very clear to us from the language of the will itself, considered in connection with the admitted facts as to the character and value of her estate, that the deceased desired the children of her deceased daughters to have the portion of her property so designated, and that her son should take the remainder of whatever property she had at the time of her death as residuary legatee. The disposi-

tion to the grandchildren must be regarded as a specific devise.

While the testatrix did not in terms provide for the payment of her debts, or in any way refer to the same, we think that the will clearly enough shows, when considered in connection with the condition and value of her property, and the small amount of indebtedness, that she intended her grandchildren to have the comparatively small proportion of her property given them in any event, leaving the remainder of her property to pay the expenses of administration and debts and to furnish her son with what she considered an adequate provision.  Section 1359 of the Civil Code recognizes the appearance of such an intention under such circumstances as here exist, by expressly providing that the property of a testator, except as otherwise specially provided in such code and the Code of Civil Procedure, must be resorted to for the payment of debts in a prescribed order, which is, after property expressly appropriated by the will for that purpose and property not disposed of by the will, first, ''property which is devised or bequeathed to a residuary legatee''; second, ''property which is not specifically devised or bequeathed''; and third, ''all other property ratably''; the section further providing that before any debts are paid, the expenses of administration and the allowance to the family must be paid or provided for.  If this were all the legislation on the subject it would at once settle the question of contribution from the property given to the grandchildren as to all debts of deceased and expenses of administration.  But section 1563 of the Code of Civil Procedure provides that ''the estate, real and personal, given by will to legatees or devisées, is liable for the debts, expenses of administration, and family expenses, in proportion to the value or amount of the several devisees or legacies, but specific devises or legacies are exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator, and there is other sufficient estate.''  Whether there is any conflict between these sections material to the question we are considering we do not deem it necessary to determine, inasmuch as we consider the devise to the grandchildren to be a specific devise, and further consider that it appears that the exemption thereof from liability for the debts, etc., is necessary to

carry into effect the intention of the testatrix. As we have seen, there is other estate, sufficient not only to pay all such debts, etc., but also sufficient to leave for the son after such payment much more in value than the property given in the aggregate to the children of the two deceased daughters. Even if section 1563 of the Code of Civil Procedure in any way limits the effect of section 1359 of the Civil Code, the case here measures fully up to the requirements for exemption specified in the former section.

The mortgage debt in this case was one created by the testatrix herself prior to the making of her will. The mortgage on her interest in the Italian Gardens property was given by her to secure her promissory note of the same date, on which at the time of the making of the will and the time of her death she was personally liable. The mortgage was a mere incident of the debt evidenced by such note. Her liability on account thereof was just as much a "debt" within the meaning of the word as used in the provisions regarding payment of debts contained in our probate act, as any of her unsecured liabilities. In section 765 of Page on Wills, it is declared that "the rule that a testator's debts are primarily payable out of his personalty applies not only to his general debts but to such debts as have become liens upon specified property of testator, whether real or personal. Unless the contrary appears in his will those debts are payable primarily out of his personal estate not specifically bequeathed." Of course, in this state, we have now abolished all distinction between real and personal property as to priority in this matter (Civ. Code, sec. 1358; Code Civ. Proc., sec. 1516), the rules as to priority being prescribed by the codes, regardless of the character of the property. But this does not affect the principles declared in the section from Page on Wills that we have quoted. We find no dissent in the authorities on the proposition that where the mortgage lien was created by the testator himself to secure his own debt, and at the time of his death the mortgage is simply collateral security for the personal obligation, it is to be paid, as between executors, devisees, legatees, and heirs, in the same manner as the general unsecured debts of the deceased, in so far as the question from what property of deceased it is to be paid is concerned, unless the will discloses a different intent on the part of the

testator.   This principle was stated as "the settled rule of
English and American law" in *Estate of Woodworth,* 31 Cal.
600.   (See, also, *Brown* v. *Baron,* 162 Mass. 56, [44 Am. St.
Rep. 331, 37 N. E. 772] ; *Higbie* v. *Morris,* 53 N. J. Eq. 177,
[32 Atl. 372].)   It is likewise held that as between the execu-
tor and those interested in the estate it can make no difference
in this regard that the holder of the mortgage does not pre-
sent his claim against the estate, but prefers to rely entirely
on the future enforcement of his lien against the specific prop-
erty mortgage.   (See Page on Wills, sec. 765; *Turner* v.
*Laird,* 68 Conn. 198, [35 Atl. 1124].)   As suggested in the
case just cited, the extent of the testator's bounty to a certain
person cannot thus be reduced by the acts or omissions of
the creditor, and as between the executor and those interested
in the estate, the payment should be made from other funds
of the estate so far as it can be, in order to effectuate the
gift from the testator to the specific devisee.

What we have said not only establishes the merit of  the
claim of the grandchildren as to the balance remaining unpaid
on the mortgage debt and interest accruing thereon, but also
disposes of the claim of the son that he is entitled to a credit
on account of the one thousand five hundred dollars already
paid on account of the principal of the mortgage debt.   It
further practically establishes as valid the claim of the grand-
children in regard to the rents and profits derived from the
land.   The title to the real property devised to them vested
in them at the moment of the death of the testatrix, subject
only to the possession of the executor for purposes of admin-
istration, including the payment of expenses of administration
and debts in the order prescribed by law, in view of the pro-
visions of the will.   It was said in *Estate of Woodworth,* 31
Cal. 600: "That is to say that the rents of the real estate
accruing subsequent to the death of the testator, for the pur-
pose of marshalling the assets, should be regarded as belong-
ing to the realty from which they were derived.   Such was
the rule at common law, and no change in this respect appears
to be intended."   There is nothing in our statutes, so far as
we have found, that is contrary to this view.   We think the
discussion in *Estate of Woodworth,* 31 Cal., at pages 604 and
605 sufficiently shows that this is true.   The executor holds
*all* the property of the estate for purposes of administration,

including not only the rents and profits of land specifically devised, but the land itself, and all of this property is subject, if necessary, to disposition for the payment of expenses and debts. But in such a case as the one before us, we must primarily resort to a certain portion of the property of the deceased for such purposes, and cannot resort to the other portion until the primary fund for such purposes is exhausted. And here such primary fund is that given to the residuary legatee. As between him, he being the only other person interested in the estate, and the grandchildren, the net rents and profits of the real property specifically devised to the children, accruing since the death of deceased, are a part of such realty, and, there being sufficient other property to pay all debts and expenses in full, should have been awarded to the grandchildren. It was not, as between the son and the grandchildren, a proper application of any part thereof to pay the same on account of interest on the mortgage or on account of any expense of administration or debt of deceased.

There can be no doubt of the power and duty of the court in probate to determine all such questions between heirs, legatees, and devisees in regard to their rights as such, as are here presented. (See *Estate of Heydenfeldt,* 106 Cal. 434, 440, [39 Pac. 788] ; *Estate of Woodworth,* 31 Cal. 600.) We cannot see that the claims of the grandchildren in this regard were not made before the probate court in such manner as to entitle them to have them determined, and the matter was disposed of in that court upon the theory that it was properly before the court for determination. We do not see that *Estate of Porter,* 138 Cal. 618, [72 Pac. 173], is in point on any of the material questions in this case.

From what we have said it follows that the executor should have been adjudged to have in his hands for distribution to the grandchildren, four-fifteenths of the amount of rents and profits of the Italian Gardens property received by him from the date of death of deceased, less four-fifteenths of the amount of taxes paid by him on such property, and that the net amount thus ascertained should have been distributed in equal shares to the eight grandchildren, and also that the decree of distribution should have provided that the whole of the principal sum of the promissory note and mortgage and all unpaid interest thereon should first be paid, satisfied, and discharged

out of said real property known as said Italian Gardens other than the undivided interest of five acres distributed to the grandchildren, before resort is had for such purpose to any portion of the undivided interest of five acres distributed to said grandchildren.

As the only persons interested in the estate are the appellants here, the son (who is the executor), and the grandchildren, the controversy can be finally settled by the ascertainment of the amount of rents and profits now due the grandchildren and the entry of a new decree in accord with the views expressed herein.

It is ordered that the decree appealed from be reversed, with directions to the lower court to ascertain the amount of rents and profits now due the grandchildren under the views we have expressed, and to enter a new decree in accord with such views.

Shaw, J., and Sloss, J., concurred.