**Appeal of NORTH AMERICAN LIGHT & POWER CO.**

**Appeal of NORTH AMERICAN CO. et al.**

**Nos. 10033, 10041.**

United States Court of Appeals
Third Circuit.

Argued Dec. 22, 1949.

Decided Feb. 28, 1950.

Henry N. Ess, III, New York City (Stoddard M. Stevens, New York City, Sullivan & Cromwell, New York City, on the brief), for appellant North American Co.

Roger S. Foster, Washington, D.C. (Harry G. Slater, Chief Counsel Division of Public Utilities, Myer Feldman, Joseph Auerbach, Securities & Exchange Commission, Washington, D.C., on the brief), for Securities & Exchange Commission.

Percival E. Jackson, New York City (Theodore N. Tarlau, New York City, Joseph J. Bryer, New York City, on the brief), for Pope Yeatman, Jr., and others.

Arthur E. Whittemore, Boston, Mass. (John R. Hally, Boston, Mass., Nutter, McClennen & Fish, Boston, Mass., on the brief), for appellees, Frances W. Emerson and others.

Clayton E. Kline, Topeka, Kan. (Doran, Kline, Cosgrove, Jeffrey & Russell, Topeka, Kan., on the brief), for appellant, North American Light & Power Co.

Before MARIS, GOODRICH and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

The object of this appeal is to determine who is to get $570,000. The District Court said it was to go to the owners of publicly held shares of North American Light & Power Company. That company and the North American Company object.

This litigation is, it is to be hoped, the epilogue in the liquidation proceedings dealt with by this Court under the title In re North American Light and Power Company, 3 Cir., 1948, 170 F.2d 924. In that case we upheld as fair and equitable a plan submitted by the North American Company for the liquidation of its subsidiary, North American Light & Power Company, pursuant to the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79. By that plan the owners of publicly held shares of the Light & Power Company were to re-

ceive, for each Light & Power share held, three-tenths of a share of Illinois Power Company common stock.[1]

The plan was the fruition of a long series of negotiations, compromises and the like. It will be found described in detail in our opinion cited above. During the period between approval by the Securities and Exchange Commission, District Court approval and our approval there was inevitably some delay. The dates are as follows: Commission approval was June 25, 1947;[2] District Court approval was October 27, 1947;[3] our opinion approving the plan was filed on December 5, 1948. The effective date of the amended plan was January 14, 1949.

In this interval between the approval of the plan by the Commission and its final going into effect by the distribution of the shares of Illinois Power, that company declared a series of dividends. The question in this case is, who gets those dividends? The plan, every one agrees, does not specifically allocate the dividends to any one. The claim by the owners of the publicly held shares is for the dividends which were distributed in the period from December 18, 1947 (note that this is subsequent to the District Court order enforcing the plan) to January 14, 1949, which was the date for the plan's becoming effective, following the approval of the various courts as outlined above.

The litigants agree upon one point. A District Court may not rewrite or modify a plan as approved by the Securities and Exchange Commission. S.E.C. v. Chenery Corp., 1943, 318 U.S. 80, 91, 63 S.Ct. 454, 87 L.Ed. 626; In re Engineers Public Service Co., 3 Cir., 1948, 168 F.2d 722, 739, reversed sub nom. S.E.C. v. Central-Illinois Securities Corp., 1949, 338 U.S. 96, 69 S.Ct. 1377. Likewise, they all agree that under Section 11(e) of the Act, 15 U.S.C.A. § 79k(e), the

District Court may make orders appropriate to the carrying out of a plan. Appellants say that the District Judge in allocating the dividends described above to the publicly held common shares modified the plan which the Commission, the District Court and this Court had approved. The appellees say he did no such thing, that what he did was to make an order within the framework of the plan to carry out what the Commission had approved. The Commission, itself, seems not to care who gets the dividends. It takes the position that the plan is fair and equitable either way and that in its opinion the District Court's order was not a modification of the plan.

In spite of the unusually able argument for the appellants our consideration of the problem convinces us beyond doubt that the District Judge was correct. It is true that the Commission made no order specifically referring to the dividends, but we have no doubt that the matter was in the minds of its members when the plan was approved. Illinois Power had not paid dividends on the common stock for a considerable period of time. It had a good sized issue of preferred stock upon which dividends were long in arrears. Part of the plan of liquidation, which is not before us, got rid of the preferred stock and of all its arrearages. It also got rid of claims and counterclaims asserted among North American, North American Light & Power and Illinois Power. The Commission, in approving the plan, pointed out in considering why the plan was a good thing for the shareholders of North American Light & Power that Illinois Power was now in a position to pay dividends and, therefore, of course, its stock would be attractive to the persons who received it in distribution in this liquidation proceeding. Also, it is in the record that one dividend had been declared on the common shares during the time the plan was in

1. In the plan, also, there was a provision whereby shareholders who did not wish to take the Illinois Power Company stock could receive $7.50 per share for common stock of North American Light & Power Company. We are not concerned here with any phase of this alternative provision.

2. Holding Company Act Release No. 7514. The Commission's approval was conditioned upon North American's amending its plan to meet the suggestions of the Commission. This condition was met.

3. In re Illinois Power Co., D.Del.1947, 74 F.Supp. 317.

the hands of the Commission and before it was approved. We feel little doubt that in the Commission's looking over this plan and considering its fairness to the people who were to give up their North American Light & Power shares, it considered Illinois Power's dividend prospects as part of that which made the plan a fair one.[4]

Dividends from when? It is to be noted that the appellee shareholders were to get a specific thing, that is, shares in Illinois Power. North American was to get everything else for itself. Dividends since the plan became effective, of course, go to the people to whom the distribution was made, or their successors in title. The narrow question here has to do with those dividends which were declared between District Court approval of the plan and its subsequent going into operation. It is to be borne in mind, too, that the group of shareholders who appealed to this Court, attacking the fairness of the plan, were but exercising a legal right given them by the statute. Nor do we see, although argument intimated to the contrary, that appellants were somehow in default in not putting the plan into effective operation pending the appeal, since no stay order was asked for or entered. We do not agree with that argument and find nothing in any charge made against either North American or North American Light & Power which

would indicate lack of good faith in carrying out the plan.

■ Nevertheless, we have no doubt that the appellees are entitled to these dividends. We think that the shares and their ability to produce dividends were in the minds of both the Commission and the courts in approving the plan. The shares were specifically allocated, under the plan, to these shareholders and we think they are entitled to the fruit as well as the tree. To change the figure into another rustic analogy, the tail goes with the hide.

The analogy of the situation in probate law was talked between Court and counsel at the argument and appears in appellants' brief. We think the analogy excellent, although we do not find that the application of it comes out the way the appellants say it should. We think the plan, in this case, is comparable to a testator's will. The testator makes a specific legacy of a cow to one friend and his residuary estate to another friend. In the period between the death of the testator and the final order of distribution by the probate court there is, of course, some delay for the collection of assets, presentation and payment of claims, etc. During this period the cow bears a calf. Whose calf is it? The authorities are clear that the calf belongs to the specific legatee, not the residuary legatee.[5] And, of course,

---

4. In approving the plan, the Commission said that "The record suggests that Illinois Power possesses inchoate elements of value which the management anticipates will mature as a consequence of the settlement. The revision of the power contract benefits Illinois Power by permitting it to obtain the status of a generating as well as a distributing company. *Furthermore, for the first time in many years the Illinois Power common stockholders can look forward to the payment of dividends on their stock* [emphasis added]." Holding Company Act Release No. 7514. After the District Court had approved the plan and issued an enforcement order, some owners of publicly held North American Light & Power common shares petitioned the Commission for a determination of who was to get the Illinois Power dividends. The Commission refused to pass on the question, holding that it was a question of interpreting

the District Court's order which should have been addressed to that Court. We are aware of language in the Commission's memorandum opinion and order that "Amended Plan I does not include any provision that dividends received by [North American] Light & Power on the Illinois Power common stock which is to be distributed under the plan are to accompany such a stock. * * * We think it proper to say that our Findings and Opinion were written without any contemplation of the question of the dividends and that we did not have the question then in mind." Holding Company Act Release No. 8763, December 29, 1948. But it is nevertheless true that the Commission anticipated the declaration of dividends by Illinois Power.

5. Cf. Nelson v. Nelson, 1849, 41 N.C. *409. In the Nelson case, there was a specific bequest of a female slave, who gave birth to four children between the time of the

it is equally well settled that a will, when admitted to probate, speaks from the time of the testator's death.[6] We do not have to get into as fine a question as that in this litigation. The testator's death might be comparable to the approval of the plan by the Commission, in which case the admission to probate would be comparable to the approval of the plan as fair and equitable by the District Judge. But here the shareholders are only claiming dividends declared subsequent to the approval of the plan by the District Court. Therefore, we do not have to face the question of dividends which accrued between Commission approval and Court approval of the plan. As indicated above, we think the probate analogy is a sound one. We think that dividends naturally go with the specific allocation of a given asset to a given group of shareholders. We do not think a testator would find it necessary to add "with increase" when he left a cow as a specific legacy to his friend. Nor do we think the Commission had to say "with dividends" when it approved the allocation of Illinois Power shares to a certain group of Light & Power shareholders.

This, we think, disposes of the case. There are no authorities directly on the point to cite because evidently the question has not come up in litigation. We think the order of the District Court was strictly within the framework of the plan. All it did was to write an order making effective what we think was the necessary interpretation of the allocation of the Illinois Power

stock to the owners of the publicly held shares of North American Light & Power.

The order of the District Court will be affirmed.

HASTIE, Circuit Judge (concurring).

I agree that the order of the district court should be affirmed. I am unable to agree that judicial action awarding the dividends in controversy to the public common stockholders amounts to no more than interpretation and enforcement of the approved plan of reorganization. Nor do I find it helpful to characterize that action as "within the framework of the plan".

I. First, the plan does not expressly mention these dividends. And the Commission says that it had no intention of ruling on their disposition since it did not advert to the matter.

Second, it cannot be established as a matter of law that the uncontemplated allocation of these dividends to either party is an implication inherent in the plan. While it can be argued that because these dividends were not otherwise allotted they should be added to the residue allocated to the North American Company, it can with equal force be argued that they should go to the public common stockholders as the earnings, after approval of the plan, of property specifically allotted to them. Neither alternative is, as a matter of logic, inconsistent with the plan. Neither is, as a matter of law, required by the plan. Either disposition involves action beyond the interpretation of

---

testator's death and the date of distribution. It was held that the children as well as the mother belonged to the legatee. Graybill v. Warren, 1848, 4 Ga. 528, also involved a specific bequest of a slave, with the legatee not to take possession until he reached 21 years of age. The court held that the legatee was entitled to proceeds from the hire of the slave from the date of the testator's death until the legatee's twenty-first birthday. The same rule applies to specific devises of real estate; profits go to the specific devisee rather than to the residuary legatees. In re De Bernal's Estate, 1913, 165 Cal. 223, 131 P. 375, Ann.Cas.1914D, 26 (rents accruing after the testator's death); In re Pope's Estate, 1909, 83 Neb.

723, 120 N.W. 191 (crops standing upon the ground pass to the specific devisee). There are many cases holding that a specific legatee of corporate stock takes dividends declared thereon after the testator's death, no matter when earned. In re McDougald's Estate, 1942, 149 Fla. 468, 6 So.2d 274; Thayer v. Paulding, 1908, 200 Mass. 98, 85 N.E. 868; Allen v. Allen, 1909, 76 N.J.Eq. 245, 74 A. 274, 139 Am.St.Rep. 758; Matter of Security Trust Co., 1917, 221 N.Y. 213, 116 N.E. 1006; Sherman v. Riley, 1920, 43 R.I. 202, 110 A. 629.

See, in general, 4 Page on Wills § 1599 (3d Ed. 1941); Note, 1938, 116 A.L.R. 1129.

6. 2 Page on Wills, § 938 (3d Ed. 1941).

the plan and the carrying out of its provisions, and, therefore, beyond the specific language of the statute which outlines the judicial role in effectuating Section 11(e) reorganizations.

On the other hand, we are not dealing with a situation like that which confronted this court in the Engineers' case.[1] There it was the reallocation of assets by the district court which had, in effect, already been otherwise allocated by the plan which was disapproved by this court and the Supreme Court as beyond the competence of a court under the Public Utility Holding Company Act. Neither of the alternatives presented to us here has any such effect upon the approved plan.

II. The situation requires that some competent agency, now in first instance, dispose of property newly introduced into the corporate estate between the time of the decree approving a plan of reorganization and its affirmance on appeal. And the task must be accomplished without authoritative guide from the statute, the reorganization plan, or any rule of property law.

The special competency of the Commission to evaluate the factors involved in such a problem as this and the fact that the Commission has already made exhaustive analysis of the considerations involved in this reorganization would ordinarily suggest the propriety and desirability of seeking guidance from the Commission. However, in this case, the Commission has already been asked to rule on the disposition of the property in question, and it has deferred to the district court because the dividends were earned after the Commission's function as defined in Section 11(e) of the Act had been completed, and the corporate estate had passed into *custodia legis*. At the same time, in anticipation of concern about the propriety and scope of judicial action, the Commission explicitly found that the fairness of the plan would not be affected by award of the dividends to either of the parties to this appeal.[2]

Moreover, the public common stockholders have invoked the jurisdiction of the court to settle the controversy. And although appellants deny the power of the court to award the dividends to the public common stockholders, they contend that the court should find that the legal effect of the plan has been to allot the dividends to the North American Company. Thus the Commission and all of the parties to this appeal are asking the court to take decisive action in the premises. No one wants the matter sent back to the Commission.

In these circumstances, the court should act if it lawfully can.

III. I think the district court sitting, as provided in the Public Utility Holding Company Act, as "a court of equity" has power to dispose of the dividends. Although the problem here appears to be of first impression in proceedings under this Act, similar problems of property disposition have been incidental to rate making orders. In United States v. Morgan, 1939, 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211, the Secretary of Agriculture had fixed stockyard rates which were challenged as improper by certain packers. Pending the determination of the propriety of the rates and the method of their establishment, the court ordered the payment to its clerk of the difference between what the stockyards were charging and what the Secretary's order would authorize them to charge. Thereafter the court set aside the Secretary's order for procedural improprieties in its entry, without disposing of the fund. Moreover, under the peculiar circumstances of the case neither past nor prospective administrative action could reach the fund and it was therefore argued that the court had power only to return the fund to the packers. Although no solution of this problem was to be found in the Stockyards and Packers Act, 7 U.S.C.A. § 181 et seq., the Supreme Court concluded that the general power of a court of equity over property within its custody was adequate for a ju-

---

1. In re Engineers Public Service Co., 3 Cir., 1948, 168 F.2d 722, reversed sub nom. S.E.C. v. Central-Illinois Securities Corp., 1949, 338 U.S. 96, 69 S.Ct. 1377.

2. It is to be noted that this finding was concurred in by the district court.

dicial award consonant with justice. Cf. Federal Power Commission v. Interstate Natural Gas Co., 1949; 336 U.S. 577; 69 S.Ct. 775.

Again, in bankruptcy cases, courts occasionally have to deal with funds the existence of which was unanticipated by the parties and the statute. The courts have never felt their powers as courts of equity inadequate to dispose of such funds on equitable principles. Thus, in Johnson v. Norris, 5 Cir., 1911, 190 F. 459, L.R.A. 1915B, 884, some $88,000 remained in the hands of the trustees after the payment of all claims. The debtor took the position that this entire balance should be returned to him. The creditors took the position that first they should be paid the interest which had accrued on their claims since the date of filing. The statute, in terms, had no provisions for the repayment of any sums to the debtor, nor any provision allowing the payment of interest accruing after the filing of claims. But the court held that its inherent powers as a court of equity were adequate for the disposition of the fund and the allowance of the priority claimed by the creditors. Cf. Berl v. Crutcher, 5 Cir., 1932, 60 F.2d 440; but cf. Wheeling Structural Steel Co. v. Moss, 4 Cir., 1932, 62 F.2d 37.

Such cases are sufficiently suggestive of the range of judicial power in dealing with funds in *custodia legis* in analogous situations to be persuasive that equivalent power exists here. They exemplify the inherent power of equity to achieve justice fully in the disposition of a subject matter which in some appropriate manner has come within its reach and control. A statutory scheme, whether in bankruptcy or rate making or public utility holding company reorganization, may serve to bring an estate within the jurisdiction of equity for the accomplishment of specified purposes. But the statutory outline of the judicial role in such cases cannot anticipate, nor in terms comprehend, all problems which may arise or all action which may be necessary to achieve justice fully, yet in manner consistent with

the overall purpose of the statute. Thus the statute leaves a substantial area for the exercise of inherent judicial power, although in the nature of the case, precise definition of that area is neither desirable nor practicable.

The contention of appellants that the district court lacked power to enter the order appealed from presupposes that Section 11 (e) of the Act forecloses the district court from exercising this normal and inherent equitable power. But neither the language nor the structure of the Act justifies this conclusion. Retention of the essential character and incidental powers of an equity tribunal is entirely consistent with the express grant to the court of a veto power in connection with the determination that a plan is fair and equitable and the power to enter orders to carry out the terms and provisions of a plan. Express statutory authorization is not essential to the exercise of such normally inherent power. The absence of statutory prohibition suffices.

I think it enough for this decision that the statutory scheme for implementation of a reorganization plan had brought all of the assets of the corporation within the jurisdiction of a court which the statute denominates a court of equity; that the dividends in question were earned by stock thus in *custodia legis*; that neither the duty nor the power of the court with reference to the disposition of this property is prescribed or defined by the statute; and that reorganization as contemplated by the Public Utility Holding Company Act is not fully accomplished so long as these dividends, a part of the corporate estate, remain undistributed. In such case the court can and should seek to achieve full justice consistent with the overall purposes of the Act by an award of the dividends in accordance with the court's best judgment of fairness.

IV. Once the critical problem of judicial power is solved, I have no doubt that the award of the dividends to the public common stockholders was equitable and should be approved.